381 So.2d 287 (1980)
Enrique GUZMAN, Appellant,
v.
SURGE ELECTRIC, INC., and United States Fidelity & Guaranty Company, Appellees.
No. QQ-442.
District Court of Appeal of Florida, First District.
March 11, 1980.
*288 Arnold R. Ginsberg of Horton, Perse & Ginsberg, and Ratiner & Glinn, P.A., Miami, for appellant.
Summers Warden, Coral Gables, for appellees.
SHIVERS, Judge.
Appellant, Enrique Guzman, brings this appeal from a final workmen's compensation order entered April 3, 1979, awarding appellant temporary total and permanent partial disability benefits, based on the finding appellant had suffered a 17% permanent partial disability to the body as a whole. The judge of industrial claims found appellant had suffered no loss of wage-earning capacity.
Appellant brings the following points on appeal:
1. Whether the judge erred in finding that appellant failed to establish by competent, substantial evidence that he suffered a loss of wage-earning capacity.
2. Whether the judge erred in concluding that the initial treating physician, Dr. Piper, did not submit his rating report until March 13, 1978, in that the record reflects a rating report submitted to the carrier on September 1, 1977.
We affirm Point 2 but reverse Point 1. Appellant proved by competent substantial evidence that the compensable accident resulted in some loss of wage-earning capacity.
Appellant, aged 36 with a diploma from a foreign technical school, has a job history in electrical work. On March 31, 1977, the date of accident, he was employed full-time performing heavy electrical work for appellee, Surge Electric, Inc., at the pay rate of $6.00 per hour. His work involved climbing ladders, and required the use of both hands. His accident occurred when he fell off a scaffold, resulting in severe fractures of his left wrist and pelvic bone. The treating orthopedic surgeon, Dr. Piper, felt appellant could return to work by May 31, 1977. The doctor initially submitted a rating report on September 1, 1977, reporting that appellant had reached maximum medical improvement on August 31, 1977, with a 25% permanent impairment of the left upper extremity. He also noted that appellant's left wrist could markedly improve with further surgery. Reevaluating appellant on March 13, 1978, Dr. Piper still believed that appellant reached maximum medical improvement on August 31, 1977. However, on reevaluation of appellant's wrist condition, he opined appellant had only a 20% permanent impairment of the left upper extremity, instead of the 25% impairment figure noted previously. Dr. Piper felt appellant had progressed much more than originally anticipated, and surgery was not required at the present time. In explanation of the earlier, higher impairment rating, Dr. Piper testified a mix-up in his records also contributed to his reevaluation.
Appellant attempted to return to work on May 31, 1977, but his employer had no work available at that time. Rehired by the employer on July 1, 1977, appellant's pay was temporarily increased to $11.25 per hour, because his employer assigned him to a government contract job, and had to pay him the prevailing government wage standard. Appellant could not do the heavy jobs he had previously done, but otherwise performed essentially the same work. After working without problems for several months, he found another full-time job as electrician and mechanic with a different *289 employer. His pay rate for this job was the prevailing wage of $7.50 per hour, and this job required only light electrical work.
Appellant testified he would probably be making more than his present wages had he not been physically restricted to light electrical work. Few opportunities existed for light electrical jobs within his physical capabilities. Appellant still has difficulty lifting with his injured wrist and experiences thigh pain after eight hours of work. Dr. Piper testified appellant's wrist condition is progressive, so that further surgery is a virtual certainty, and further arthritic degeneration of the wrist will occur.
On Point 2, we affirm the judge's order. The parties do not discuss the significance of this point. However, competent, substantial evidence supports the judge's finding that "appellant reached maximum medical improvement on August 31, 1977, although Dr. Piper did not submit his rating report until March 13, 1978." Dr. Piper consistently opined that appellant reached maximum medical improvement on that date, in both his narrative reports of September 1, 1977, and March 13, 1978. But the evidence shows that Dr. Piper gave inconsistent ratings regarding appellant's extent of permanent impairment. Specifically, he revised the first report's 25% impairment rating in the later report of March 13, 1978, which gave a lower 20% permanent impairment rating. This reevaluation was justifiably based upon his opinion that appellant's permanent impairment was less than originally anticipated. Thus, the judge correctly found that Dr. Piper did not submit his rating report until March 13, 1978. The record shows Dr. Piper did not submit his final evaluation of the extent of permanent impairment until that date.
On Point 1, however, we reverse the judge's finding that "claimant has failed to establish by competent, substantial evidence that he suffers a loss of wage-earning capacity." The record plainly shows appellant's industrial accident did result in some loss of wage-earning capacity. His physical condition as a result of injuries from that accident has restricted him to a more narrow range of electrical jobs than he once could perform. It is apparent that he now can no longer perform heavy electrical work, and will remain limited to only light electrical jobs, such as his present job. Thus, he is effectively precluded from finding any better paying heavy electrical work, and from taking advantage of the full range of job opportunities for both heavy and light electrical work.
The evidence was neither competent nor substantial to sustain the judge's finding appellant suffered no loss of wage-earning capacity. The mere fact he apparently returned to work at increased wages is not dispositive on the issue of whether he sustained any loss of wage-earning capacity. Kurtz v. Wall, 182 So.2d 618 (Fla. 1966). As the court stated in Walker v. Electronic Products & Engineering Co., 248 So.2d 161 (Fla. 1971), the actual wages earned by a claimant after his injury are an important factor for determining loss of wage-earning capacity, but certainly not the sole factor.
Accordingly, we reverse that portion of the order finding no loss of wage-earning capacity. The judge of industrial claims has failed to consider the relevant criteria from Walker, supra, and to determine the extent of appellant's loss of wage-earning capacity. Consequently, the judge of industrial claims erred by failing to make an award according to whichever of appellant's disabilities is greater: his disability based on physical impairment, or his disability based on diminution of wage-earning capacity. § 440.15(3)(u), Florida Statutes (1977).
The order is hereby reversed in part and the cause remanded for entry of an order consistent with our opinion.
ERVIN and SHAW, JJ., concur.