PER CURIAM.
This is an appeal in a workers’ compensation proceeding from the deputy commissioner’s order denying temporary total and/or temporary partial disability and/or wage loss benefits from August 2, 1982 through August 23, 1983. The deputy commissioner found that although claimant had conducted an adequate, good faith work search, claimant had not shown that his wage loss was related to his compensable injury. We must determine whether the deputy erred when he held himself bound by vague and questionable testimony, simply because no contrary evidence was presented. We conclude that the deputy commissioner misconstrued his role as the trier of fact and misunderstood the discretion which he has to reject questionable testimony.
On January 21, 1982, while driving a truck for Ross Products, a subsidiary of Sammons Enterprises, claimant was injured in a motor vehicle accident in Texas. Claimant sustained multiple lacerations to different parts of his body, but the most severe injury was to his left elbow. Claimant sustained an open fracture and dislocation of his left elbow. His left arm required physical therapy and plastic surgery, after the bones began to mend. Claimant was released by his orthopedic surgeon to return to work as of August 1, 1982, with a 10% permanent physical impairment to the whole arm. Claimant’s left arm, as a result of the compensable injury, has limited mobility, and is permanently scarred. In addition, claimant has a ten to fifteen pound limitation on any lifting with *515 his left arm. At the date of the hearing, claimant had reached maximum medical improvement from an orthopedic standpoint, but he had not reached maximum medical improvement from all his compensable injuries because further treatment was contemplated by his plastic surgeon.
Claimant is 55 years old. He has a fifth grade education but cannot read or write. For the past thirty years, his occupation has been that of a truck driver. He has no special job training or vocational training. He began working in a cotton mill when he was seventeen, following that he worked for a bakery for six years loading and unloading trucks. At the time of his 1982 injury, claimant had worked for Ross Products for seven years. Ross Products manufactures, sells, leases, and services golf carts. Claimant’s duties included driving tractor/trailer rigs for long hauls, and loading and unloading golf carts, golf cart batteries, and golf cart chargers. Batteries for electric golf carts weigh approximately sixty-five pounds each, and chargers for golf carts weigh approximately sixty pounds each.
Claimant returned to work for Ross Products in August 1982. Before his injury, claimant drove a truck and delivered golf carts alone. After the injury, another employee was assigned to ride with him to help load and unload. Before his injury, claimant had been paid at the rate of twenty-two and twenty cents a mile, but with the addition of an employee to ride with him — claimant’s rate of pay was reduced to ten cents a mile. At some point in time, claimant was paid at the flat rate of $325.00 a week, but evidence was conflicting as to just when this salary arrangement was put in place. The deputy commissioner noted in ¶ 8 of his order that—
Bill Donald, the general manager for Ross Products, a division of the employer, testified that a pay cut went into effect in 1982 before the claimant’s accident occurred, and he said that this pay cut affected all drivers. The claimant admitted that, when he did return to work following his accident, the other truck drivers had also suffered a cut in pay. Mr. Donald also testified that the $325.00 per week salary went into effect in November of 1982. (e.s.)
Thus, there is an inconsistency in the general manager’s testimony which the deputy commissioner noted. Claimant’s accident occurred January 21, 1982, and he returned to work in August 1982. If the general pay cut went into effect in November 1982, it was after claimant’s injury and after claimant’s return to work.
On December 23, 1982, following a trip to Detroit, claimant was terminated by Ross Products. Claimant testified that he was told he was no longer needed. The general manager, Bill Donald, testified to several instances of misconduct which he alleged as basis for claimant’s discharge. In U 10 of the order, the deputy commissioner found that—
there was no proof presented that the claimant was terminated from his job due to an inability to perform the duties of his job, whether or not such inability could be attributed to his compensable injury. Counsel for the employer/carrier did present evidence of certain conduct of the claimant for which the claimant received warnings from the employer. While these examples of conduct could be interpreted as being the fault of the employer, rather than being the fault of the claimant, there was no evidence presented that the claimant was not performing his job duties satisfactorily following his return to work with the employer herein. While I feel that the testimony of Bill Donald to the effect that the claimant was fired because of various instances of misconduct is somewhat vague and questionable, I feel bound to accept this testimony because of the lack of any competent, substantial evidence to the contrary. The testimony regarding the reduction in pay (to some extent) for all drivers tends to indicate that the claimant probably was terminated as part of an overall reduction in the number of drivers working for the employer, but I simply have no way to tell whether or not the claimant was sin *516 gled out due to the alleged misconduct or because of his compensable injury, (e.s.)
Following his termination by Ross Products, claimant obtained part-time employment with Boylan Sales. His rate of pay with Boylan Sales was $5.50 an hour, or $220.00 a week had he worked a 40-hour week. Claimant worked for Boylan Sales from December 31, 1982 until May 21, 1983, when he was laid off because the season had ended.
The deputy commissioner denied wage loss benefits, saying:
while I feel that the claimant has made an adequate, good faith job search, again there appears to be no evidence that the claimant’s failure to locate work and/or failure to locate higher-paying work is due to the restrictions caused by his com-pensable injury. Since I feel that the claimant’s loss of wages is due to his termination, which has not been proven to have occurred as a result of the com-pensable injury, I find that the claimant has failed to prove his entitlement to compensation benefits from August 2, 1982 through August 23, 1983, the date of this hearing. See Citrus Central v. Parker, 423 So.2d 610 (Fla. 1st DCA 1982) and Certified Grocers v. Opel, 430 So.2d 953 (Fla. 1st DCA 1983). Although the claimant was earning $325.00 a week at the time he was fired, rather than his average weekly wage of $480.56, it appears that this reduction in pay was due to economic conditions. Furthermore, the claimant demonstrated that he was physically able to perform the duties of his job at the time that he was fired, and therefore, I cannot find that his loss of wages has been shown to be related to the compensable injuries that he suffered.
In relying on Citrus Central v. Parker, supra, to support a finding that claimant's reduction in pay was due to economic conditions and therefore bore no relationship to his industrial injury, the deputy commissioner did not have the benefit of this court’s reasoning in Williams Roofing, Inc. v. Moore, 447 So.2d 968 (Fla. 1st DCA 1984). In explication of Parker, the court said:
Parker does not stand for the proposition that being laid off from employment for economic reasons negates a causal connection between the industrial injury and any subsequent wage loss. Nor does Parker stand for the proposition that a claimant can never prove a causal relationship if he returns to his pre-acci-dent job at the same or greater pay but subsequently suffers a wage loss. Parker merely stands for the proposition that a claimant must produce competent substantial evidence from which there can be inferred a causal relationship between the industrial injury and any subsequent wage loss, and that evidence of being laid off for economic reasons unrelated to the injury, without more, is insufficient to establish this causal relationship, (e.s.) Williams Roofing, Inc. v. Moore, supra, at [972].
In Parker, the truck driver claimant suffered a low back injury, after which he returned to his former job, with a 5% permanent physical impairment. He was paid at an hourly rate slightly higher than his pre-injury earnings — and then was laid off due to economic conditions. Following his lay-off, claimant went to work for another trucking company. When his former employer attempted to recall him to work, the claimant elected to stay with his new employer even though the rate of pay was less because the new job entailed steady employment, i.e., no seasonal layoffs. On these facts, the court held that Parker failed to establish that his wage loss was related to his compensable injury. Opel, supra is similar. There, following a com-pensable injury, claimant returned to his former job, and then was laid off. He obtained another job, and was again laid off. The evidence demonstrated that both job layoffs were related to economic conditions rather than to claimant’s injury.
The cases cited by the deputy commissioner are not on point with the case here under review. This record reflects that claimant has suffered a 10% permanent *517 partial impairment of his left arm, and that he is restricted to lifting no more than ten to fifteen pounds with his left arm. Claimant’s job duties with Ross Products included loading and unloading golf carts with golf cart batteries and chargers, in addition to driving a truck for long hauls. These batteries and chargers weigh sixty-five and sixty pounds respectively. The record also reflects, as the deputy commissioner noted in ¶ 9 of the order, that claimant’s rate of pay was cut from twenty cents a mile to ten cents a mile because another employee had to be assigned to his truck to do the loading and unloading. After being terminated by Ross Products, claimant obtained a part-time job at Boylan Sales. In deposition, Donald J. Moore, sales manager with Boylan Sales, testified that Boylan Sales is involved in the sales, servicing, and leasing of golf carts. Moore stated that claimant was paid at the rate of $5.50 an hour during his employment with Boylan Sales, but he received no other benefits because he was a part-time employee. Moore also testified that although claimant experienced no difficulty in driving due to his physical limitation, he could not lift batteries and chargers. Moore was aware that claimant could neither read nor write, but said that this fact had no bearing in terms of claimant’s work performance for Boylan Sales, since claimant had been driving golf cart tractor/trailers for approximately seventeen years and was well acquainted with every golf course in the area.
In our view, these facts demonstrate that claimant was unable to perform all the duties of his job at the time he was fired. Although claimant’s driving ability was not impaired due to his compensable injury, the evidence demonstrated that due to his injury claimant was no longer able to perform an essential part of his job, i.e., load and unload trucks. The deputy commissioner specifically found that, following claimant’s injury, his pay was reduced from twenty cents a mile to ten cents a mile due to the addition of another worker to handle the loading and unloading. And the record reflects, through deposition of the sales manager of Boylan Sales, that claimant’s rate of pay when he was hired on a part-time basis at Boylan Sales was $5.50 an hour. Had claimant been able to work a 40-hour week for Boylan, his earnings would have been $220.00 a week, considerably less than his pre-injury earnings of $480.56 a week. At some point in time all truck drivers at Ross Products had been paid a flat rate of $325.00 a week, however the evidence does not make clear just when this pay scale went into effect. It is clear from this evidence that claimant suffered a wage reduction from twenty cents a mile to ten cents a mile due to his inability to load and unload a truck. Claimant’s job with Boylan Sales reflects a comparable wage loss. Thus, there is competent substantial evidence in the record “from which there can be inferred a causal relationship between the industrial injury and any subsequent wage loss.” Williams Roofing, Inc. v. Moore, supra. The employee has the burden of “showing a change in employment status due to the injury, and an adequate and good faith attempt to secure employment commensurate with his abilities so as to establish, prima facie an economic loss and to show that he or she has not voluntarily limited his or her income or failed to accept employment commensurate with his or her abilities.” Regency Inn v. Johnson, 422 So.2d 870, 876 (Fla. 1st DCA 1982), rev. denied, 431 So.2d 989 (Fla.1983). Here, although the deputy commissioner found that claimant had conducted an adequate, good faith work search, and that claimant had suffered an economic loss, since claimant’s- driving ability was unimpaired the deputy commissioner found no connection between the industrial injury and claimant’s subsequent wage loss.
By this finding the deputy commissioner has ignored or overlooked evidence in the record that demonstrates that due to his industrial injury, an additional worker was assigned to ride with claimant to load and unload the truck, and claimant’s pay was reduced accordingly. The deputy commissioner takes particular note of these facts in 11 9 of the order, but he does not consider claimant’s impaired ability to per *518 form the collateral duties involved in driving a truck as a sufficient basis to award wage loss benefits. In so holding the deputy commissioner has rejected evidence that demonstrates that loading and unloading a truck was an essential part of claimant’s job, and he suffered a wage reduction as a direct result of his injury when he could no longer perform those duties. While, generally speaking, a deputy commissioner need not explain acceptance or rejection of testimony, an exception exists “where the reason for the finding is not apparent from the record, or where, as here, it appears that the deputy commissioner has overlooked or ignored evidence in the record.” Poorman v. Muncy & Bartle Painting, 433 So.2d 1371, 1373 (Fla. 1st DCA 1983). Accord: Rouse v. Wyldwood Tropical Nursery, 392 So.2d 370, 373 (Fla. 1st DCA 1981); Jefferson Stores, Inc. v. Rosenfeld, 386 So.2d 865, 866 (Fla. 1st DCA 1980).
According to the deputy commissioner’s findings, claimant’s wage loss was occasioned by his termination by Ross Products. The deputy commissioner felt the termination was not related to claimant’s compensable injury, so he held that claimant was not entitled to wage loss benefits. In making this determination, the deputy commissioner held himself bound to accept the testimony of Bill Donald, former manager of Ross Products, that claimant was fired due to misconduct and not because of his physical impairment. The deputy commissioner found this testimony “vague and questionable,” but accepted it because no evidence was offered to the contrary. This was error, for “a fact finder is not required to accept uncontroverted testimony which he does not believe.” John Caves Land Development Co. v. Suggs, 352 So.2d 44, 45 (Fla.1977).
In the case sub judice, the deputy commissioner .was presented with (1) medical evidence concerning claimant’s physical impairment and the limitations attendant upon that physical impairment, (2) an outline of claimant’s job duties, and (3) evidence that claimant’s hourly wage was reduced because an additional worker had to be placed on his truck to do the loading and unloading that claimant is no longer able to do. The inference that claimant’s wage loss was a result of his compensable injury was controverted by the questionable testimony of Mr. Donald that claimant was terminated due to misconduct. We agree with the deputy commissioner that the claimant has not presented concrete evidence that his failure to locate work and/or failure to locate higher paying work is due to the restrictions caused by his compensa-ble injury; however, the record is clear that claimant’s wages were reduced before he was terminated. As this Court said in Williams Roofing, Inc. v. Moore, supra:
The presence or absence of any particular fact, such as a layoff due to economic conditions, should not be legally determinative of the deputy commissioner’s findings. Rather, the deputy commissioner must look to the totality of the circumstances to determine whether a claimant has shown a causal relationship between the injury and the wage loss, (e.s.)
Here, claimant has demonstrated that his industrial injury has resulted in a physical impairment which made it impossible for him to perform the collateral duties of his job and a diminution in earning power because of his physical impairment. The deputy commissioner was correct in finding that claimant’s termination was not clearly shown to be related to his compensable injury. Nevertheless, there is in this record competent substantial evidence to the effect that claimant experienced a wage reduction, due to the compensable injury, before he was terminated by Ross Products. Since claimant has demonstrated a loss of wage earning capacity as a result of his compensable injury, the deputy commissioner’s order denying wage loss benefits is reversed.
REVERSED and REMANDED for entry of an order consistent with this opinion.
SMITH and ZEHMER, JJ., concur.
JOANOS, J., dissents with written opinion.