458 So.2d 1197 (1984)
SUPERIOR PONTIAC and Lynn Underwriting, Appellants,
v.
Wayne H. HEARN, Appellee.
No. AY-266.
District Court of Appeal of Florida, First District.
November 14, 1984.
Kenneth L. Olsen of Miller, McKendree & Somers, Tampa, for appellants.
Joseph V. Barrs of Barrs, Williamson & Levens, Tampa, for appellee.
SMITH, Judge.
Appellants Superior Pontiac and Lynn Underwriting appeal a final order issued by the deputy commissioner granting appellee Wayne H. Hearn temporary partial disability (TPD) and wage loss benefits. Appellants contend that the evidence does not support an award of either type of benefit. We agree and therefore reverse.
Hearn, while working for Superior Pontiac as an automobile mechanic, suffered a potentially compensable industrial accident on January 31, 1981, when he dropped a radial tire on the small finger of his right hand. He was treated for his injury by Dr. Martinez, who diagnosed a fracture of the fifth metacarpal and sequestrian's disease, a form of reflex sympathetic dystrophy. This diagnosis was confirmed by Dr. Boling, both initially in 1981 and upon re-examination in 1983. Dr. Martinez released Hearn to return to work April 1, 1981. Hearn did so and continued to work for Superior Pontiac until August 12, 1982.
Hearn testified at the hearing below that he left his job with Superior Pontiac because his finger continued to bother him to the extent that he was not able to accept certain repair jobs offered by Superior Pontiac, with the result that he was earning *1198 less income than prior to his accident.[1] However, the only evidence offered by Hearn to substantiate this claim was the testimony of a supervisor, Kyle Cook, that on one occasion Hearn turned down a proffered under-dash repair job because his hand bothered him while working at that "certain position." Hearn voluntarily left Superior Pontiac August 12, 1982. Shortly before this, he sold the bulk of his personal tools which he used during work at Superior Pontiac. Hearn admitted on cross-examination below that he had informed Mr. Cook that he sold these tools in order to pay off a delinquent child support obligation to avoid imprisonment by the circuit court. Also admitted into evidence below was a letter allegedly written by Hearn to his ex-wife which, among other things, stated "I sold my tools to pay you the last time and there is nothing else to sell." Finally, Hearn also admitted on cross-examination that automobile dealerships in the area did not furnish tools for their mechanics.
After leaving Superior Pontiac on August 12, 1982, Hearn was employed by his father-in-law in a commercial printing business, working for two months and earning $40.00 in commissions. Subsequently, Hearn began employment at an Exxon service station in November 1982, working as the station's chief mechanic, a job Hearn apparently maintained through the date of the hearing before the deputy commissioner. His average weekly income at the Exxon station for the remainder of 1982 was $231.63, and was $217.67 through May 1983. Payroll records at Superior Pontiac show that in 1980, the year prior to his injury, Hearn's average weekly wage was $302.75; from April 1, 1981, when he returned to work for Superior Pontiac after his surgery, until the end of 1981 it was $317.11; and that for the year 1982, it was $332.80.
The medical evidence below consisted of the notes and medical reports of Drs. Martinez and Boling. Dr. Martinez reported that Hearn reached maximum medical improvement on November 1, 1982, with a permanent impairment rating of 2% to the injured hand when compared to the whole body. However, Dr. Martinez opined that Hearn, in spite of his permanent impairment, was capable of returning to his previous job with Superior Pontiac. Dr. Boling, although finding no objective clinical signs of permanent impairment, rated Hearn as suffering from a 10% impairment of the hand based on Hearn's subjective complaints only. Even so, Dr. Boling concurred with Dr. Martinez regarding Hearn's ability to return to work at the same job he performed prior to his injury.
In the order appealed from, the deputy noted that the parties had stipulated that the date Hearn reached maximum medical improvement was November 1, 1982. In specifically crediting Hearn's testimony at the hearing, the deputy found that while one of the reasons Hearn left Superior Pontiac was because he had sold his tools, this was not the only reason. More particularly, the deputy found that Hearn left Superior Pontiac partially because he was no longer able, as a result of his finger injury, physically to keep up with his employment duties. Although the deputy expressed uncertainty as to whether Hearn was entitled to wage loss benefits where, even though suffering from permanent physical impairment, the medical testimony was that he was capable of performing his former occupation, the deputy awarded the benefits, stating that he was "leaving it up to [this] court" to establish the proper rule of law in such a situation. We agree with the E/C's contention that our decision in C & B Interiors v. Crispino, 446 So.2d 242 (Fla. 1st DCA 1984), points to a result adverse to the claimant on this issue, and that the deputy commissioner's ruling must therefore be reversed.
In Crispino, the claimant sustained a compression fracture which was rated by *1199 the examining physician as resulting in a 6% permanent impairment. As here, the treating physician in that case placed no physical restrictions on the claimant and further testified that the claimant could return to his previous job. In reversing an award received by the claimant, this court in Crispino held that a claimant's continued subjective complaints of pain are insufficient, as a matter of law, to justify the award of wage loss benefits.
It is clear that the burden of proof is on a claimant to prove all elements of a wage loss claim. Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982). Here, Hearn has failed to show the most basic element of his claim; namely, that his physical limitations subsequent to his accident were a contributing causal factor in his alleged wage loss. City of Clermont v. Rumph, 450 So.2d 573, 576 (Fla. 1st DCA 1984); Williams Roofing, Inc. v. Moore, 447 So.2d 968, 972 (Fla. 1st DCA 1984). Both Dr. Martinez and Dr. Boling testified that, although Hearn suffered from a permanent physical impairment, he was capable of returning to and performing adequately his prior job with Superior Pontiac. Hearn's testimony of continued subjective pain, standing alone, is insufficient to establish his entitlement to wage loss benefits. Piccadilly Cafeteria v. Polite, 433 So.2d 591 (Fla. 1st DCA 1983).
It is important to understand what this court is not holding. We do not say that the mere failure of Hearn to continue working for the same employer (Superior Pontiac) subsequent to his injury defeats his wage loss claim. Rather, it is the fact that the totality of evidence adduced below, Williams Roofing, Inc. v. Moore, supra, at 972, fails to demonstrate that he has lost the ability to perform his old job at Superior Pontiac. It is true that Hearn testified that the injury "slowed him down." But he introduced no objective evidence to substantiate this claim. On the contrary, both physicians opined that Hearn could return to his former work; and the record is devoid of any medical evidence to suggest that Hearn's ability to perform his work duties would be slowed down by the injury, or that his symptoms might "flare up" from time to time, thereby preventing him from performing a particular job that he might have been able to perform prior to his accident. Neither did Hearn offer payroll or other evidence indicating a reduction in his earnings or a corresponding increase in the earnings of his co-workers attributable to the transfer of repair jobs from Hearn to his co-workers. Accordingly, the evidence before the deputy establishes no wage loss. It logically follows that the decline in average weekly wages Hearn suffered when he went to work for Exxon  after quitting his job with Superior Pontiac  was the result of his voluntary limitation of his income. Under these circumstances, the evidence supporting Hearn's wage loss claim falls short of the competent, substantial evidence standard required in such cases. Cf. Woodard v. Dade County Board of Public Instruction, 278 So.2d 620 (Fla. 1973) (claimant forced to retire due to work-related injuries; wage-loss award upheld even though claimant returned for a time for the same wage subsequent to his injury).[2]
Similarly, we find the deputy commissioner erred in awarding TPD benefits. *1200 Hearn was clearly not entitled to TPD benefits from April 1, 1982, until August 12, 1982, the period during which he worked before finally leaving Superior Pontiac. During that time, he was actually working at his old job and was making a slightly higher average weekly wage than before his injury. Accordingly, there was no actual wage loss as required by Section 440.15(4), Florida Statutes (1983). For the period between August 12, 1982, and November 1982, between jobs with Superior Pontiac and Exxon, his entitlement to TPD benefits is questionable, in view of his acceptance of a job (the commercial printing job with his father-in-law) obviously not commensurate with his abilities. More significantly, however, Hearn failed to prove that the acceptance of this lower-paying job was the result of his industrial accident, since he still had available to him and was capable of performing his previous job. Brice Southern, Inc. v. Cancino, 447 So.2d 367 (Fla. 1st DCA 1984). Hearn's "subjective but medically unverified" testimony regarding his inability to continue his job-related duties at Superior Pontiac is insufficient, standing alone, to support the award of TPD benefits. Standard Industrial Linen Co. v. Freeman, 419 So.2d 711, 713 (Fla. 1st DCA 1982).
Accordingly, the order appealed from is REVERSED.
BOOTH and THOMPSON, JJ., concur.
NOTES
[1] Hearn was paid partially on a commission basis, the commission depending on the value of the repair job undertaken.
[2] Guzman v. Surge Electric, Inc., 381 So.2d 287 (Fla. 1st DCA 1980), cited by Hearn in support of the deputy's ruling, is distinguishable. In Guzman, the claimant, who was injured on the job, returned to work with the same employer subsequent to his injury. However, the claimant was not able to perform the heavy work he was able to perform prior to his accident. Guzman later left his original employer, and began working with a different employer performing the same work, albeit of a lighter exertional range, but at lesser wages. The Guzman court held that that claimant had clearly suffered a wage loss because his physical condition, which was a result of his compensable injuries, "restricted him to a more narrow range of [jobs than] he once could perform." Id. at 289. In Guzman, not only did the medical evidence show claimant to be restricted in his performance capabilities after his injury, but further established that his impairments would become progressively worse, rendering that claimant's future wage losses medically assured. Here, on the other hand, the medical evidence established neither present nor predictable future wage loss.