496 So.2d 947 (1986)
RINGLING BROTHERS BARNUM AND BAILEY CIRCUS and Insurance Company of North America, Appellants,
v.
Horst O'BLOCKI, Appellee.
No. BK-474.
District Court of Appeal of Florida, First District.
October 29, 1986.
*948 John J. O'Riorden of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellants.
Alexander G. Paderewski, Sarasota, for appellee.
MILLS, Judge.
Ringling Brothers Barnum and Bailey Circus and the Insurance Company of North America (E/C) appeal from an order of the deputy commissioner awarding temporary total, temporary partial and wage-loss benefits. We affirm in part and reverse in part.
At the time of the accident herein, O'Blocki was employed by the E/C as the lead performer in a circus act involving the formation of a human pyramid. He suffered a comminuted fracture of his right ankle in August 1983 when he fell from the pyramid during a performance. He returned to work for the E/C after two or three months but was not able to assume his former acrobatic duties. His contract with the E/C expired in December 1984 and was not renewed.
Written job search records covering the months from December 1984 through April 1985 show that O'Blocki contacted numerous employers in Florida, as well as in other states and overseas, seeking employment in the circus and/or entertainment field. He also testified, through an interpreter, that he looked in the classified section of the newspaper "but only for his purpose" (presumably only for circus/entertainment jobs). There is no written evidence of a job search in May 1985.
On 24 May, O'Blocki's physician determined that surgery was necessary to remove the last of the hardware which had been placed in the ankle to aid in healing. This surgery was performed on 5 June and O'Blocki reached maximum medical improvement on 18 July 1985. The only evidence in the record of a job search after MMI is registration with the Florida State Employment Service. No job offers resulted from this action, but on 15 October *949 O'Blocki accepted a position doing swimming pool maintenance which he heard about at a social occasion. He was so employed at the time of the November 1985 hearing on his claim for TPD, TTD and/or wage-loss benefits.
The deputy commissioner entered his order granting the claim in December 1985, finding that O'Blocki had been TPD from December 1984 through 24 May 1985 and, based on medical testimony, had been TTD from 25 May 1985 until MMI. The D/C also found O'Blocki entitled to wage-loss benefits from MMI to the time of the hearing. The only finding with regard to the adequacy of O'Blocki's work search was "[t]he claimant has made an effort to return to work and to find work within his capacity without success since [December 9, 1984]."
The E/C alleges first that it was error to award TPD and wage-loss benefits in that O'Blocki failed to demonstrate a causal connection between his injury and his inability to find work. We cannot agree. The E/C relies on the fact that O'Blocki stayed on with the circus for over a year after his injury and left only because his contract expired, citing Citrus Central v. Parker, 423 So.2d 610 (Fla. 1st DCA 1982) (claimant was laid off for economic reasons after returning to work post-injury; court found no causal connection between the injury and the wage-loss).
However, the holding of Citrus Central was strictly limited in Williams Roofing, Inc. v. Moore, 447 So.2d 968 (Fla. 1st DCA 1984), when the court held that a layoff for economic reasons without more was insufficient to show the required causal connection. The test for whether physical limitations subsequent to an accident are a contributing causal factor to wage-loss was later established as the claimant's capability of returning to and performing adequately his prior job with the E/C. Superior Pontiac v. Hearn, 458 So.2d 1197, 1199 (Fla. 1st DCA 1984) (emphasis supplied).
Here, there is medical testimony to the effect that, due to the possible instability of O'Blocki's ankle after his industrial accident, he cannot safely return to his prior job as a human-weight-supporting acrobat. It was not contended by the E/C that O'Blocki continued to perform such work during the period following his accident until the expiration of his employment contract but rather that he performed light duty only during that time. Therefore, we find that O'Blocki demonstrated the required causal relationship between his injury and his inability to work so as to support the awards of TPD and wage-loss herein.
When an injured worker has recovered the ability to work but is not yet MMI, he is entitled to TPD benefits but only as established by a conscientious work search or a medical excuse therefor. Hill v. Baptist Hospital, 464 So.2d 1350 (Fla. 1st DCA 1985). There is no evidence of a medical excuse for the required search but we find that, with regard to the period between December 1984 and April 1985, there was competent, substantial evidence that O'Blocki conducted a conscientious work search so as to establish his entitlement to TPD benefits for that period.
The good faith of a work search must be determined in light of all existing circumstances, including physical impairment, age, industrial history, training, education, motivation, work experience, work record and the like. Paramount Poultry v. Mims, 472 So.2d 1281 (Fla. 1st DCA 1985). O'Blocki is a 43-year-old male with little facility in the English language and no industrial history, training or experience except in the circus/entertainment field. Written job searches for this period reflect an extensive search in that field.
It is true that a claimant who seeks only such types of work as he will be unable to perform has not conducted a good faith search, Couture Fashions, Inc. v. Romay, 461 So.2d 235 (Fla. 1st DCA 1984), and that O'Blocki was medically restricted from returning to acrobatics. However, the record reflects that O'Blocki was not seeking the acrobatic work which he could not do but jobs such as moving *950 scenery, teaching, "spotting" other performers, and the like. Therefore, we find that the evidence supports an award of TPD benefits from December 1984 through April 1985.
However, the record does not contain written job search records for the period between 1 May and 24 May 1985 nor a medical excuse therefor. While the failure to keep a written list does not preclude the finding of an adequate job search, the claimant must adduce competent substantial evidence, in any form, that he made a bona fide effort to obtain work commensurate with his post-accident abilities. Couture Fashions at 239. The only evidence of a job search after April 1985 is O'Blocki's testimony that he read classified ads. This is entirely inadequate to support a conclusion that a good faith work search was conducted. Watson-Mahaney, Inc. v. Best, 492 So.2d 846 (Fla. 1st DCA 1986). Therefore, the award of TPD benefits for the period commencing 1 May 1985 through 24 May 1985 is reversed.
Similarly, an injured employee seeking wage-loss benefits has the burden of showing not only a causal connection between the loss of employment and the industrial accident, but an adequate and good faith attempt to secure employment commensurate with his ability as well. Nicholson v. Sammons Enterprises, Inc., 457 So.2d 513, 517 (Fla. 1st DCA 1984). There is no written record of a job search after MMI on 18 July 1985, and the only other evidence of an attempt to find work after that date is registration with FSES. This is inadequate to support an award of wage-loss benefits. Because the E/C challenge only the award for the period between MMI and 15 October 1985, we reverse the wage-loss award for that period only.
Finally, although the E/C does not dispute that O'Blocki was TTD from the date of his ankle surgery on 5 June 1985 through MMI, it contends that it was error to commence the award on 25 May 1985, the date on which it was determined that surgery was necessary. While we are mindful of the general principle that, in the absence of substantial evidence of medical inability to work during a period of claimed temporary disability, the claimant must test his employability on the job market, this principle has been found "plainly subject to qualification with respect to short periods" when medical evidence supports the award of benefits for those periods. Southern Bell Telephone and Telegraph Co. v. Seneca, 433 So.2d 1369, 1370 (Fla. 1st DCA 1983). Because there was some medical testimony below that O'Blocki was TTD beginning 25 May 1985, the award of TTD benefits from that date is affirmed.
Affirmed in part and reversed in part.
BOOTH, C.J., and WENTWORTH, J., concur.