528 So.2d 58 (1988)
GLADES CORRECTIONAL INSTITUTION and State of Florida, Appellants,
v.
Jacqueline BUKOWSKI, Appellee.
No. 87-1045.
District Court of Appeal of Florida, First District.
July 1, 1988.
Daniel A. Lewis, of Law Offices of David A. Danielson, West Palm Beach, for appellants.
Thomas Montgomery, Belle Glade, for appellee.
MILLS, Judge.
Glades Correctional Institution appeals an order of the deputy commissioner *59 awarding appellee Bukowski temporary partial disability (TPD) and wage loss benefits. Because we find that Bukowski failed to prove the most basic element of her claim, that her physical limitations subsequent to her accident were a contributing causal factor in her alleged wage loss, we reverse.
Bukowski was employed as a Correctional Officer I by Glades Correctional Institution (GCI) from 21 September 1979 to 21 December 1984. In November 1983, she broke her leg in the course and scope of this employment. On 23 January 1984, Bukowski returned to work, instructed by her doctor to perform light duty for two weeks, then to return to her full duties. Although medical evidence in the record establishes that she suffered a four percent permanent impairment from her injury, nowhere do any type or form of medical restrictions on physical activity appear, save for the prescribed two weeks of light duty.
After that period of light duty, Bukowski returned to her regular duties, which she performed for the next year without difficulty. On 14 December 1984, she submitted her resignation to GCI, on the stated ground that the climate in the area was worsening her son's asthmatic condition and she had been advised to relocate farther north; a letter from the child's doctor to that effect was attached. In a later deposition, Bukowski specifically denied that there was any personal physical reason for her resignation. She maintained that position at the final hearing, but testified for the first time that she actually left because of an incident of sexual harassment which she had chosen not to pursue.
In any case, after leaving GCI Bukowski relocated to the Lakeland area where she commenced lower paying clerical duties at a hospital in April 1985. She testified that in March 1985 she had looked at Polk Correctional Institution for a position (she did not state that it was a correctional officer position) but that, after showing her leg, she was never contacted about a job. Bukowski worked at the Lakeland hospital until September 1985. She commenced another clerical job at Lake Butler Reception and Medical Center in Raiford in December 1985, where she still works. She testified that she has never applied for a correctional officer position, although still certified therefor, because of the possibility of an 8-hour physical fitness test, which in her opinion she could not perform. She further testified that she felt she could never qualify for her former position again because of a required annual 40-hour use-of-force training course involving running, exercising and karate, which in her opinion she could not perform. She also stated that her ankle would no longer bend properly for the required firearm stance, although Dr. Scharf reported in an 18 June 1986 report (the only medical evidence in the record) that she had full range of motion in her ankle.
With regard to the 40-hour use-of-force annual training course, E/C's personnel manager, Gray, testified that this course, while encouraged, was not required of correctional officers to maintain their state certification; only the annual firearms requalification was required for that. The manager further testified that Bukowski's state certification was still intact and that she could return to such a position with no further training course.
The foregoing evidence was adduced at the hearing on Bukowski's claim for TPD benefits from March 1986 to June 1986 and for wage-loss from June 1986 to June 1987. It was the E/C's position at the hearing that Bukowski's wage loss was not related to her accident in that she voluntarily terminated her position for unrelated reasons and that she had since voluntarily limited her income. Based on the foregoing evidence the D/C, without explanation, found that E/C's defenses were "unfounded", and that Bukowski had had to give up her old duties because she could not physically perform them or qualify for them. Her claims for TPD and wage-loss were thereupon granted.
The burden of proof is on the claimant to prove all elements of a wage loss claim, including the most basic element, "that his physical limitations subsequent to his accident were a contributing causal factor in his alleged wage loss." Superior Pontiac v. Hearn, 458 So.2d 1197, 1199 (Fla. 1st DCA 1984). Whether a claimant *60 has shown this causal relationship between the injury and a change in employment status is a factual question to be determined by the DC from competent substantial evidence. Mathis v. Lewis Bear Co., 511 So.2d 663, 664 (Fla. 1st DCA 1987). It is not the case, as E/C argues, that Bukowski's initial voluntary termination of her employment with E/C of itself precludes an award of wage loss. Such an award is not barred simply because it occurs after a period of successful post-accident employment and is attributable in some part to a non-injury related factor. Mathis.
However, the claimant does have the burden to present evidence which reasonably permits a conclusion that his compensable physical limitation was an element in the causal chain resulting in or contributing to the wage loss. Rodriquez v. Sheraton Bal Harbour Hotel, 509 So.2d 369, 371 (Fla. 1st DCA 1987). The facts of Superior Pontiac, supra, are similar to those herein. In that case, as in this, medical testimony established permanent impairment but not that the claimant was unable to return to and perform his prior job. The court held that the claimant's testimony of subjective pain, standing alone, was insufficient to establish his entitlement to wage loss benefits and concluded that "it logically followed that the decline in average weekly wage claimant suffered when he [took another job]  after quitting his job with [E/C]  was the result of his voluntary limitation of income." Superior Pontiac at 1199.
Here, the only medical evidence established that Bukowski could return to work "full duty" and that, as of MMI, she had full use of her injured leg, despite a four percent permanent impairment. She repeatedly stated that no physical difficulty caused her to leave her job after a year's successful performance of it. The evidence that she could no longer physically qualify for or perform her former job consisted of her subjective opinion that she could not, unsupported by any medical opinion of restriction whatever. Further, even were her opinion of her inability to perform physically supported, it was unrefuted that no physical qualifications would have to be met for her to remain certified for the job, save for firearms qualification. Again, her opinion that her ankle prevented performance of this latter requirement is refuted by medical evidence of a full range of motion in the ankle as of MMI. Neither can a causal connection be established by an unsuccessful job search, since Bukowski declined to make such a search based on her own unsupported belief that it would be fruitless. Therefore, her acceptance, without a search and without medical restriction, of a lower paying job must be seen as a voluntary limitation of income. However, we do not reach the question of deemed earnings in that Bukowski failed to demonstrate a causal connection between her injury and wage loss.
With regard to TPD benefits, Bukowski failed to prove that her acceptance of the lower paying job before MMI was the result of her accident, since she still had available to her and, for all the evidence adduced shows, was capable of performing her previous job. Her subjective but medically unverified testimony regarding her ability to perform her former job-related duties is insufficient standing alone to support the award of TPD. Superior Pontiac at 1200. We reverse both awards.
SHIVERS and WIGGINTON, JJ., concur.