570 So.2d 371 (1990)
Earnese DAVIS, Appellant,
v.
BROWARD COUNTY HEALTH DEPARTMENT, and Crawford & Company, Appellees.
No. 89-1744.
District Court of Appeal of Florida, First District.
November 13, 1990.
Barbara B. Wagner and C. Randal Morcroft, Deerfield Beach, for appellant, cross-appellee.
David W. Black of Atkinson, Jenne, Diner, Stone, Cohen & Klausner, P.A., Hollywood, for appellees, cross-appellants.
*372 MINER, Judge.
This case presents a timely appeal and cross-appeal from an order awarding workers' compensation benefits. Claimant/appellant urges that the Judge of Compensation Claims (JCC) erred in denying wage loss benefits based solely on her failure to present medical evidence of work restrictions. We agree and reverse.
On cross-appeal, the employer/carrier (e/c) argue that the JCC erred in (1) awarding claimant temporary partial disability (TPD) benefits for certain time periods; (2) assessing penalties against the e/c; (3) ordering payment of medical bills after claimant had reached maximum medical improvement (MMI), and (4) awarding claimant an evaluation by a new orthopedic surgeon. With respect to the first, third and fourth points of the cross-appeal, we find that competent substantial evidence supports each award and affirm those parts of the JCC's order without further comment. As to the award of penalties, we find the e/c's argument to be well taken and reverse.
Claimant, a 31 year-old probationary employee of the Broward County Health Department, was involved in a compensable accident on April 8, 1985, when she tripped and fell, injuring her right shoulder, elbow, hand, hip and both legs. During a six-day hospital stay, Dr. Lazar, an orthopedic surgeon, discovered a fractured kneecap. He placed a brace on both of claimant's knees and kept her off work. On May 20, 1985, Dr. Lazar released claimant to return to work with restrictions on squatting, bending, lifting and carrying.
Claimant returned to work on May 29 but was terminated on June 19 for failure to successfully complete her probationary period. Thereafter, she collected unemployment compensation and, without being advised by the e/c of her duty to undertake a job search, began looking for work. She would later testify that her work search throughout the remainder of 1985 was unsuccessful.
In February of 1986, persistent pain in her left knee caused her to return to Dr. Lazar, who performed an arthroscopic procedure on the knee. The e/c paid for this surgery when Dr. Lazar opined that the necessity for such was related to claimant's earlier fall. On March 26, claimant was released for work by Dr. Lazar with most of the same restrictions he had previously imposed. Upon her release for work, claimant resumed her job search and in May of 1986 began working as a substitute school teacher.
On June 4, 1986, claimant saw Dr. Lazar once again for her knee problems. She was treated and told to come in on an as needed basis. Although Dr. Lazar gave her a permanent impairment rating of 3-5%, no permanent work restrictions were imposed. In April of 1987, claimant returned complaining of knee, back and elbow pain for which Dr. Lazar prescribed a hot tub and spa. In the weeks that followed, claimant returned several more times with basically the same complaints, all of which Dr. Lazar attributed to the earlier accident.
Claimant stopped working as a substitute teacher in October of 1987. Subsequently, after working at various temporary clerical and sales jobs, she accepted full-time employment as a social worker in November of 1988.
On October 31, 1988, a claim was filed requesting the following benefits: (1) TTD and/or TPD from June 1985; (2) wage loss after MMI, which Dr. Lazar set as June 4, 1986; (3) treatment by a new orthopedic physician; (4) payment of medical bills and (5) penalties, interest, costs and attorney's fees. Claimant did not submit wage loss and job search forms until five days prior to a hearing on her claim.
On May 3, 1989, the JCC issued an order, part of which awarded wage loss benefits from June 4, 1986, to October 1988. The JCC noted that claimant reached MMI without work restrictions, but awarded wage loss benefits based upon Iverson v. Holy Cross Hospital, 498 So.2d 620 (Fla. 1st *373 DCA 1986).[1]
The e/c filed a motion for rehearing asserting that wage loss benefits could not be obtained without evidence of a physical limitation. This resulted in a revised order in which the JCC reversed his previous position and denied claimant's request for wage loss. Relying primarily on Superior Pontiac v. Hearn, 458 So.2d 1197 (Fla. 1st DCA 1984), and Glades Correctional Institution v. Bukowski, 528 So.2d 58 (Fla. 1st DCA 1988), the JCC reasoned as follows:
Based upon these latter cases, I find that the claimant has failed to present evidence that medical restrictions and limitations were at least a causal factor in her claim for wage loss. All of the medical evidence adduced at trial reflects that the Claimant was left with no permanent work restrictions or limitations whatsoever subsequent to her date of maximum medical improvement. Her subjective but medically unverified testimony regarding her abilities and restrictions are insufficient, standing alone, to support an award of wage loss... . There is also no competent, substantial evidence that the Claimant lost the ability or capacity to perform her old job. Thus, the Claimant has failed to make the requisite prima facie showing of a causal connection between the injuries she suffered and the wage loss she claims and her claim for wage loss for the period June 4, 1986, to October 1988 must be denied.
Although the request for wage loss was denied, the JCC awarded TPD benefits from December 31, 1985 to February 23, 1986. TTD benefits were awarded for the period between claimant's knee surgery on February 24, 1986, and her release to work on March 26, 1986. Additionally, claimant was awarded TPD benefits for the period between her release to work in March 1986, and her reaching MMI on June 4, 1986. Although penalties and interest were also awarded, the JCC neglected to state the basis for the penalty.
On appeal, claimant argues that it was error for the JCC to deny wage loss benefits based upon the absence of work restrictions and without considering her job search. In support, claimant cites this court's recent opinion in Nowicki v. St. Petersburg Kennel Club, 558 So.2d 181 (Fla. 1st DCA 1990), which she argues is almost directly on point. There, the claimant suffered a compensable knee injury and was left with a permanent impairment. Although he returned to work for his employer, he later left for reasons unrelated to his injury. He then conducted an unsuccessful job search. The JCC denied wage loss benefits based upon the absence of medical restrictions. This court reversed and remanded the case to the JCC to consider claimant's job search.
For their part, the e/c view Nowicki as aberrational. They argue, in essence, that "physical limitation" and "work restrictions" are synonymous terms without which a claimant cannot qualify for wage loss benefits. They find inconsistency in opinions of this court dealing with this subject.
What the e/c characterize as conflict in our opinions is, we believe, not conflict at all but rather confusion attributable to the wording of the wage loss statute. Section 440.15(3)(b), Florida Statutes (1985), provides in pertinent part:
1. Each injured worker who suffers any permanent impairment, which permanent impairment is determined pursuant to the schedule adopted in accordance with subparagraph (a)3., may be entitled to wage loss benefits under this subsection... .

*374 2... . It shall also be the burden of the employee to show that his inability to obtain employment or to earn as much as he earned at the time of his industrial accident is due to physical limitation related to his accident and not because of economic conditions or the unavailability of employment.
(Emphasis added). The e/c argue that in order to carry the burden described in subparagraph 2, the claimant must demonstrate a "physical limitation" which, by e/c's estimation, is tantamount to physician-imposed work restrictions. Hence, a set of physician-imposed work restrictions is prerequisite to a wage loss claim.
In support of this position, e/c cite Superior Pontiac v. Hearn, 458 So.2d 1197 (Fla. 1st DCA 1984), and C. & B. Interiors v. Crispino, 446 So.2d 242 (Fla. 1st DCA 1984). In both of these cases, but particularly in C. & B. Interiors,[2] this court emphasized the importance of work restrictions to a wage loss claim. In neither case, however, did the court go so far as to make physician-imposed restrictions a prerequisite. Rather, the existence of restrictions was only a part of the larger inquiry essential to wage loss; that is, whether the accident and resulting physical limitations caused the claimant to lose earnings. Thus, in C. & B. Interiors, the court did not base its reversal of the wage loss award on the absence of physician-imposed restrictions, but instead cited the claimant's failure to prove "that his inability to obtain work was due to physical disability related to the industrial accident." 446 So.2d at 243.
It is a permanent impairment rating, not the existence of physician-imposed restrictions, that is prerequisite to a wage loss claim. See section 440.15(3)(b)1, Florida Statutes (1985). A claimant with a permanent impairment rating has some "physical limitation," and can establish his wage loss claim by demonstrating a causal connection between the physical limitation and his lost earnings. Although physician-imposed restrictions are a means of establishing the causal connection, the claimant may also offer an extensive but unsuccessful job search as proof. See Certified Grocers v. Conerty, 529 So.2d 1201, 1203 (Fla. 1st DCA 1988).
It is well established that the existence of a causal connection is a factual question to be determined by the JCC based on the totality of the circumstances; the claimant need only produce competent substantial evidence from which the JCC can infer a causal connection. STC/Documation v. Burns, 521 So.2d 197 (Fla. 1st DCA 1988). In Nowicki, supra, this court reversed a denial of wage loss benefits where it was clear that the JCC failed to consider the totality of the circumstances. There, the claimant had a 5% permanent impairment rating and offered evidence of an extensive but unsuccessful job search. The JCC ignored the job search and denied wage loss benefits based solely upon the absence of physician-imposed work restrictions. This court reversed the denial and remanded for consideration of the job search. We find the case at hand to be indistinguishable, and rely upon Nowicki without fear of creating or perpetuating a conflict in this court's decisions.[3]
*375 Turning now to that portion of the JCC's order that assessed penalties against the e/c, we observe that, although the JCC ordered payment of these penalties on the TTD and TPD award, the order fails to state the ultimate facts upon which such penalties are based. It is well established that an order must set forth the findings of fact or conclusions of law that support the imposition of penalties. See United General Construction v. Cason, 522 So.2d 47 (Fla. 1st DCA 1988); Florida Power & Light Co. v. Mulkerrin, 444 So.2d 583 (Fla. 1st DCA 1984); Stardust Motel v. St. Claire, 418 So.2d 1151 (Fla. 1st DCA 1982).
Accordingly, for the reasons heretofore stated, those portions of the JCC's order denying wage loss benefits after MMI and assessing penalties against the e/c are reversed and the cause is remanded with instructions to the JCC to consider claimant's job search on the wage loss issue and to clarify the facts upon which penalties were assessed. In all other respects, the JCC's order is affirmed.
Affirmed in part, reversed in part and remanded with instructions.
SHIVERS, C.J., and JOANOS, J., concur.
NOTES
[1] The JCC offered the following explanation:

[T]he Iverson Court specifically held that even without any medical evidence of permanent work restrictions, the claimant may nevertheless be entitled to wage loss if she undertakes a job search or attempts to return to work with her former employer. Since several subsequent appellate decisions have upheld the Iverson decision this Court feels bound and compelled to abide by this judgment of our appellate court... . In other words, our appellate court has held that even without competent medical evidence of any physical restrictions or limitations ... the claimant's own testimony may constitute competent evidence to support a wage loss claim.
[2] In C. & B. Interiors, this court reversed an award of wage loss benefits to a claimant with a 6% permanent impairment rating. The only stated basis for the reversal was the absence of "physical restrictions" on the claimant.
[3] We note that the legislature appears to have resolved this confusion in the 1989 amendments. Although not applicable to the instant case, the following amendment to section 440.15(3)(b)1 suggests that henceforth the existence of physical restrictions will be a prerequisite to a wage loss claim:

Each injured worker who suffers a any permanent impairment, which permanent impairment is determined pursuant to the schedule adopted in accordance with subparagraph (a)3., may be entitled to wage-loss benefits under this subsection, provided that such permanent impairment results in a work-related physical restriction which affects such employee's ability to perform the activities of his usual or other appropriate employment.
Ch. 89-289, § 12, Laws of Fla. Without presuming to interpret an amendment not presently before us, it would appear that the added language (underlined) makes the existence of work restrictions an eligibility requirement along with the existence of a permanent impairment rating. No longer is the presence or absence of restrictions merely a factor in establishing the causal connection between physical limitation and lost earnings.