600 So.2d 1153 (1992)
Fred A. TURNER, Appellant,
v.
G. PIERCE WOOD MEMORIAL HOSPITAL and State of Florida, Division of Risk Management, Appellees.
No. 91-673.
District Court of Appeal of Florida, First District.
May 18, 1992.
*1154 Brian O. Sutter of Wilkins, Frohlich, Jones, Hevia & Russell, P.A., Port Charlotte, and Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for appellant.
Donald A. Stewart of Harkavy, Mitchell, Stewart & Lovesky, P.A., Sarasota, for appellees.
ZEHMER, Judge.
Fred Turner appeals an order denying his claim for workers' compensation benefits, raising six points in support of reversal. As we reverse and remand for further proceedings on the first two points, we do not reach the remainder.
Claimant was employed by G. Pierce Wood Memorial Hospital, a mental health hospital, as a human service worker II. His duties included assisting patients, accompanying patients to certain places in the hospital, and preventing patients from attacking other patients and workers. While working on December 3, 1985, claimant was attacked by a psychiatric patient and sustained arm, neck and shoulder injuries. After receiving medical treatment for these injuries, claimant returned to work, initially limiting his duties to desk work. He eventually resumed his duties as a human service worker, however, and on January 8, 1990, he was again attacked by a patient, this time suffering an injury to his face. A few days after receiving medical treatment for this injury, claimant returned to work and continued working until March 11, 1990, when he was voluntarily admitted to a psychiatric center of a hospital in Punta Gorda with a diagnosis of depression and alcohol abuse. Upon discharge from this hospital on March 30, 1990, claimant did not return to work with employer and submitted a letter of resignation effective May 18, 1990, which his employer accepted. His reason for resigning set forth in the letter was that the position as human service worker was too stressful, that he felt insecure in the position because of the number of injuries he had suffered while working at the hospital,[1] and that claimant's counselor, out of concern for claimant's health, had recommended that he resign from that position.
Claimant then employed the services of a lawyer and, on June 8, 1990, filed a claim for compensation benefits and medical expenses arising out of the December 1985 accident. This claim was amended on July 23, 1990, to seek, in addition, benefits for injury arising out of the January 1990 accident. Employer and carrier moved to dismiss the claims arising out of the 1985 accident on the grounds that: (1) more than two years had passed since employer and *1155 servicing agent provided last medical treatment and compensation for disability rehabilitation impairment or wage loss arising out of that accident; (2) a report from Dr. Baker, dated May 27, 1988, stated that claimant had reached maximum medical improvement (MMI) from that accident with no impairment; and (3) claimant did not file any claim with regard to medical rehabilitation or other type of benefits until July 23, 1990,[2] more than two years after claimant had received any benefits for that accident.
On February 12, 1991, the judge of compensation claims entered the appealed order denying all claims for benefits under both industrial accidents. The order found that claimant sustained two compensable accidents in December 1985 and January 1990, having been assaulted by patients on both occasions. After reciting claimant's testimony about the circumstances of both accidents, the order recited that claimant
testified that as a result of each of the two accidents and also as a result of the prior accidents, that the claimant developed a psychological problem resulting from stress related to being in a work environment wherein he was exposed to assaults by different patients. The claimant related that the accident of 1/8/90 was the last of a series of accidents that subsequently caused him to have a mental breakdown on 3/11/90 resulting in a psychiatric hospitalization of 3/11/90 and treatment by Dr. Mahusey [sic].[3] He also testified that this psychiatric problem made it impossible for him to return to work.
The order further set forth the parties' stipulation that employer and carrier "provided the last medical treatment arising from the 1985 claim on 3/16/88 and that payment for the last medical treatment by the employer/servicing agent occurred on 4/20/88." The last compensation benefit for the 1985 accident was paid on 5/26/88. The order then ruled that the claims arising out of the 1985 accident were barred by the two-year statute of limitations because the June 8, 1990, claim was filed more than two years after these two dates. The order also recited, "In making this determination, it is also noted that the claimant was placed at MMI with no impairment in accordance with the report of 5/27/88 rendered by Stephen Baker, M.D."
With respect to the claims arising out of the January 1990 accident, the order recited:
(7) As to the accident that occurred on 1/8/90, it is found that claimant was assaulted during which he received a blow to the face that required treatment by Jeff R. Comer, M.D., who subsequently determined the claimant to be at MMI on 1/10/90 by report rendered 1/18/90. The claimant then immediately returned to work and continued to work without incident until 3/11/90.
(8) On March 11, 1990, the claimant's wife called Dr. Mahusey and stated that the claimant was having severe emotional problems and was stabbing a chair in his residence. Dr. Mahusey testified by deposition that he advised that he could not help the claimant unless the claimant admitted himself into the Medical Center Hospital for in-patient treatment. The claimant and his wife then went to the hospital, and he was admitted for treatment. From the claimant's deposition, and based on the medical report of Dr. Mahusey, it is found that the claimant had been drinking very heavily prior to calling Dr. Mahusey and that the claimant also had a past alcoholic history, as well as additional family problems that he was concerned about. The claimant also testified that he had been treated for anxiety for quite a period of time prior to the incident of 3/11/90 and that he was taking medication for his anxiety previously prescribed by a Dr. Cranshaw of Arcadia, Florida.
(9) Both the claimant and Dr. Mahusey testified that no request was ever made for authorization for treatment for the claimant with regard to his hospital stay *1156 of 3/10/90 through 3/30/90, nor for subsequent treatment thereafter. The claimant further testified that he had submitted his bills for psychiatric treatment and related hospitalization under the coverage of his general health insurance rather than through workers' compensation and that his health insurance paid for the majority of his hospitalization and treatment.
(10) In connection with his psychiatric problems, the following observations are made from the exhibits attached to the deposition of Dr. Mahusey: In the Florida Retirement System Report dated 5/23/90, Dr. Mahusey states that the patient's condition is a recurrent depression which indicates to the undersigned that it was a pre-existing condition. This is evidenced by prior treatment for the same type of condition by Dr. Cranshaw. Dr. Mahusey further indicated that the claimant was at MMI as to his psychiatric condition on 5/15/90, although the doctor also noted that it was not within the doctor's capacity to determine any type of a physical impairment. The medical history of the claimant rendered by Dr. Mahusey and attached as an exhibit to the deposition is also of interest. In that history, the claimant related that he had been depressed for the last two years and that he had been taking Zanax [sic]. The doctor further related that "Fred has reason to be depressed because it is a known fact that his mother was very sick, his son is also sick and his wife has an emotional illness." The doctor further related that he was not functioning well sexually. In this report, the doctor also indicated that the depression was recurrent and that the claimant was suffering from alcohol abuse, although all of his physical signs were normal. Further, the doctor related that upon admission, the claimant was intoxicated.
(11) From all of the above, it is found that the claimant's psychological and psychiatric problems pertaining to his psychiatric hospitalization from 3/11/90 through 3/30/90 and treatment by Dr. Mahusey were not related to and did not arise out of either the accident of 12/3/85 nor the accident of 1/8/90. There is more than substantial evidence to show that the claimant's problem was a recurrent depression problem that had been ongoing for at least two years or more and was more appropriately related to alcohol abuse and personal and family problems rather than to any industrial accident.
(12) It is also noted that Dr. Mahusey indicated that the claimant could return to work, although not in an environment of unpredictable and sometimes assaultive patients... .
Claimant's first point on appeal is that the findings that his psychiatric problems were due entirely to his personal problems and were not related in any way to the accidents suffered in his employment are not based on competent, substantial evidence. For the following reasons, we agree.
Generally, determination of the cause of a non-observable medical condition, such as psychiatric illness, is "essentially a medical question," Lindsay v. TVS Trucking Co., 565 So.2d 864, 866 (Fla. 1st DCA 1990), and a single medical opinion is sufficient to establish the required causation, Thomas v. Salvation Army, 562 So.2d 746 (Fla. 1st DCA 1990). In establishing causation, it is not necessary for the claimant to show that the industrial accident is the sole cause of the injury or condition, but only that it is either a competent, precipitating or accelerating cause of the injury. Apgar & Markham Construction Co. v. Golden, 190 So.2d 323, 324-25 (Fla. 1966). "[The] claimant's burden is to present evidence `which reasonably permits a conclusion that the compensable physical limitation was an element in the causal chain resulting in or contributing to the wage loss.'" STC/Documation v. Burns, 521 So.2d 197, 198 (Fla. 1st DCA 1988) (emphasis added). See also School Board of Manatee County v. Gambuzza, 510 So.2d 992, 993 (Fla. 1st DCA 1987). The aggravation of a psychiatric condition is compensable if shown to be the direct and proximate result of an industrial accident. Younkman v. Waste Collection Services, 576 So.2d 801, 803 (Fla. *1157 1st DCA 1991); Lil Champ Food Stores, Inc. v. Powers, 569 So.2d 464 (Fla. 1st DCA 1990). Where causation is established by unrefuted medical testimony, the judge may not reject that testimony unless a sufficient reason is provided for doing so. Younkman, 576 So.2d at 803 ("where the only medical testimony presented indicates that the industrial accident is the cause of the medical problem, it should be accepted unless the judge of compensation claims can offer a `sufficient reason' for rejecting it"). See also Thomas v. Salvation Army, 562 So.2d 746; Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA), rev. denied, 513 So.2d 1062 (Fla. 1987).
The only medical testimony presented at the hearing was Dr. Mahusay's deposition, and that testimony stands unrefuted on this record. Dr. Mahusay's testimony established that claimant's repeated accidents at the place of his employment were significant factors in producing his present psychiatric condition. Dr. Mahusay was asked, "despite those other things [alcohol and family problems] going on in Mr. Turner's life, and the fact that those also impacted on his situation, do you continue to feel as though the repeated accidents at G. Pierce Wood were significant or played a significant factor in the need for care that Mr. Turner got through you?," and he responded, "I believe so." Dr. Mahusay attributed significance to the fact that claimant was repeatedly assaulted by patients because "[t]hat creates a point that he was already or did build up like phobia of the patient." Dr. Mahusay further testified that from a medical standpoint, claimant cannot return to work in his former position as "[h]e could not function because he developed, I said, some kind of phobia toward the patients around him." The obvious sense of this expert witness's testimony is that claimant has been suffering from a psychiatric illness or condition which was in significant part aggravated by the assaults he suffered while working in the hospital.
Dr. Mahusay's medical reports are likewise consistent with his deposition testimony. A report completed on claimant's admittance to the psychiatric hospital on March 11, 1990, indicates:
The present emotional illness has been existing for some time. He said he noticed being depressed for the last two years, but it goes on and off. Because of his depression, he medicated himself with beer. For a good while he has been taking Xanax that was prescribed by his doctor, but only small amounts. He said the Xanax relaxed him bit it did not relieve his depression. He had been handling several stressful situations: (1) His wife had been sick a couple of times and admitted to the hospital. Not long ago his mother had been very ill, and he was working so his mother could get some treatment for her physical problems. The worse problem that he is undergoing is the job that he had been on for the last 22 years. .. . Fred has reason to be depressed, because it is a fact that his mother was very sick, his son is also sick and his wife has an emotional illness. Sexually he is not functioning well... .
(Emphasis added.) A May 23, 1990, report submitted to the Florida Retirement System indicates that claimant's disability is due primarily to an on-the-job injury or illness; the factor that caused or contributed to claimant's present condition is "stressful job situation, unpredictable and sometimes assaultive clients have produced chronic anxiety and depression"; and "[i]f patient returns to previous employment he will probably relapse."
All of this medical evidence of the relationship between claimant's psychiatric condition and the significant effect thereon caused by repeated assaults suffered on the job is unrefuted on this record. It was error for the judge to reject this medical evidence without providing a reasonable and competent explanation for doing so based on the record. Only one conclusion is evidence on this record, and that is that claimant's psychiatric condition has at least been aggravated, if not precipitated, by the assaults he suffered at work, including the one suffered in January 1990. In effect, the judge erroneously substituted for this unrefuted medical evidence his own opinion *1158 that "claimant's psychological and psychiatric problems pertaining to his psychiatric hospitalization from 3/11/90 through 3/30/90 and treatment by Dr. Mahusey were not related to and did not arise out of either the accident of 12/3/85 or the accident of 1/8/90. There is more than substantial evidence to show that the claimant's problem was a recurrent depression problem that had been ongoing for a least two years or more and was appropriately related to alcohol abuse and personal and family problems rather than to any industrial accident." The critical issue to be decided by the judge was not whether claimant's current mental illness had been caused by personal problems, as that seems rather apparent; rather, the critical issue was whether the mental condition had been caused in part or aggravated by the assault episodes at work, and if so, to what extent the employer would be held responsible for this aggravation. The ruling denying benefits arising out of the January 1990 accident is reversed and remanded for further proceedings consistent with this opinion.
Claimant's second point on appeal contends it was error to rule that his claim for benefits arising out of the December 3, 1985, accident was barred by the two-year statute of limitations in section 440.19(1)(a), Florida Statutes (1985). Claimant agrees that no compensation or medical benefits had been paid by the carrier within two years of the last medical treatment on April 20, 1988, and the carrier's last payment of compensation on May 26, 1988. Claimant's contention is simply that the statute of limitations cannot bar his claim because he attempted to obtain authorization for medical treatment from Dr. Kessler on May 1, 1990, within two years of those dates, but the employer and carrier refused to provide authorization for him to do so, failed to offer alternative medical care or obtain a judicial ruling that such medical care was not needed, and affirmatively misrepresented claimant's entitlement to benefits by telling him that the statute of limitations had already expired.
Claimant presented argument and evidence in support of this contention at the hearing. At the beginning of the hearing, his attorney stated that:
Admittedly the authorization was not provided in advance for Dr. Kessler despite the fact that it was attempted to be obtained. The carrier took the position the statute of limitations had run. It was an incorrect position. The statute of limitations had not run. My client got care on his own. And therefore falls within that two year statute of limitations.
Claimant testified that after being released from the hospital on March 30, 1990, he attempted to obtain the carrier's authorization for treatment of his arm and shoulder by Dr. Kessler, the only local orthopaedic surgeon, but "they told me that the statute of limitations had run out. And I didn't even  myself, I reckon there was some  I didn't know there was a two year statute of limitations myself." Claimant then obtained, at his own expense, treatment from Dr. Kessler beginning on May 1, 1990.
These contentions, if true, may legally operate to avoid the bar of the statute of limitations urged by the employer and carrier. See Paulk v. Berkeley Florist Supply, 574 So.2d 238 (Fla. 1st DCA), rev. denied, 584 So.2d 997 (Fla. 1991). At the very least, the claimant is entitled to have the judge of compensation claims rule on these contentions. Yet the order under review does not. Therefore, we reverse the denial of benefits based on the statute of limitations in respect to claims arising out of the December 1985 accident and remand with directions to make appropriate rulings on these contentions by claimant.
In light of our disposition of the first two points, we do not reach claimant's other points on appeal,[4] as their resolution is *1159 dependent on the rulings to be made on remand.
REVERSED AND REMANDED.
SMITH and ALLEN, JJ., concur.
NOTES
[1] Claimant testified that during his 22 years of employment with the hospital, he was involved in a total of thirteen work-related accidents, including the two involved in this case.
[2] While the claim form was prepared on and dated July 16, 1990, it was not filed with the Department of Labor until July 23, 1990.
[3] Dr. Mahusay's name is misspelled as "Mahusey" throughout the order.
[4] The other points contend that it was error (3) to reject the claim for authorization and payment of past medical charges by Dr. Kessler and Dr. Cassidy relating to the 1985 accident; (4) to deny claimant's claim for TTD, TPD, or wage loss benefits from March 11, 1990, through the date of the hearing; (5) to deny the claim for hospital charges for claimant's psychiatric treatment from March 11 through March 30, 1990, and payment of Dr. Mahusay's medical bills related thereto; and (6) to deny the claim for penalties, interest, costs, and attorney's fees.