646 So.2d 242 (1994)
Dolores ACKLEY, Appellant,
v.
GENERAL PARCEL SERVICE and American States Insurance, Appellee.
No. 93-2884.
District Court of Appeal of Florida, First District.
November 22, 1994.
Rehearing Denied January 6, 1995.
*243 J.W. Chalkley, III, Ocala, and Bill McCabe, Longwood, for appellant.
Robert A. Keeter and Denise M. Teurlings, Elizabeth H. Webb, McCarty, Helm & Keeter, P.A., Gainesville, for appellee.
DAVIS, Judge.
Claimant, Dolores Ackley, appeals from an order of the Judge of Compensation Claims (JCC) denying claimant's request for psychiatric or psychological treatment. Claimant argues on appeal that the JCC erred in finding that claimant's present psychological condition is not causally related to the industrial accident. We reverse. We hold that the JCC applied an incorrect legal standard in finding that claimant's current psychological condition is not causally related to the industrial accident. We also find that the JCC misapprehended the nature of claimant's medical problems after the industrial accident, and that the JCC failed to specify in his order why he rejected the unrefuted medical testimony of Dr. Poetter, the only psychologist to testify.
On May 30, 1988, claimant injured her back during the course and scope of her employment with General Parcel Service. After claimant's industrial accident, claimant treated with Dr. Thompson, Dr. Newcomer and Dr. Gibson. Claimant was diagnosed as having chronic low back strain and myofascial type pain in her back. Dr. Thompson prescribed medication and physical therapy, and placed claimant on a no-work status. Dr. Thompson also referred claimant to Dr. Velisetty for consideration of local injections. After claimant was placed on sedentary work status, claimant continued to take prescription pain medication, attended a pain clinic, received local cortisone injections and wore a TENS unit on a regular basis. Following claimant's injury, claimant gained a significant amount of weight and entered a weight loss program.
On March 12, 1990, claimant started treating with Dr. Webb. Dr. Webb diagnosed claimant as having a bulging disc and chronic lumbar myofascial pain. During Dr. Webb's treatment of claimant, claimant continued to take prescription pain medication, continued to see Dr. Velisetty for local injections and expressed frustration over her inability to lose weight.
In August 1991, claimant reported to Dr. Webb that she had experienced a sleep disturbance for two weeks. Dr. Webb prescribed amitriptyline, an antidepressant. In September 1991, claimant reported significant improvement with regard to her general mood and sleep pattern after taking the amitriptyline. *244 Dr. Webb instructed claimant to continue taking the amitriptyline.
On December 5, 1991, claimant filed a claim for authorization of psychological or psychiatric testing, evaluation and treatment, if necessary. Claimant also sought authorization for the Physician's Weight Loss Program. A hearing on claimant's claim was held on November 10, 1992.
Claimant was raised by a very physically and mentally abusive alcoholic father until she was 12 years of age. She later married an alcoholic and was involved in a very violent marriage for 25 years. Claimant's husband left her around 1980, and despite his history of mistreatment, claimant "went to pieces." Claimant subsequently raised her three children and remarried her current husband. Claimant was comfortable in that marriage, but not completely satisfied. Claimant admitted that, during her early years, there were a few things that bothered her, and that she had seen a counselor "years and years ago."
Claimant testified that she began getting depressed after the industrial accident. Claimant indicated that she first discussed seeing a psychologist with Dr. Thompson about 1.5 years after the industrial accident, but they did not pursue psychological treatment at that time. Claimant testified that she discussed with Dr. Webb her inability to accept the fact that she could not do many things she could do before her injury, and that she would get depressed and could not handle so much pain. Claimant testified that, prior to the industrial accident, she had been able to do everything and was very active, but that after the industrial accident she could hardly do anything. Claimant believed that she would be helped by psychiatric treatment because she was always depressed.
On January 16, 1992, claimant was admitted to the hospital for removal of her gallbladder. Claimant testified that her liver and pancreas had become infected from her gallbladder. Claimant indicated that she had pain for approximately six months prior to her gallbladder surgery, which kept getting worse as a result of stress. Claimant believed that she was in the hospital for two weeks and recuperated at home for about three months.
Dr. Webb testified that claimant became increasingly depressed in 1991. Dr. Webb testified that, in January 1992, he requested that claimant be evaluated by Dr. Poetter, a psychologist, to assist him in treatment with regard to claimant's depression and possibly with regard to claimant's chronic pain management. Dr. Webb noted that claimant's pain, to a certain extent, had been unresponsive to the medication he had been prescribing.
On February 11, 1992, claimant was evaluated by Dr. Poetter. Dr. Poetter administered a variety of tests to claimant. Dr. Poetter testified that claimant endorsed more depressive symptoms on the Multi-Score Depression Inventory than 88 percent of female adults, suggesting some significant depressive feelings at that time. Dr. Poetter explained that the Minnesota Multi-Phasic Personality Inventory-II showed that claimant had underlying emotional problems, suggesting very pervasive and long-standing emotional problems that recently had worsened for different reasons. Dr. Poetter noted that people who answer items on the test, as claimant did, have a severe underlying anxiety-based problem.
Dr. Poetter testified that claimant gave a history of becoming increasingly depressed approximately two years after the industrial accident. Dr. Poetter testified that claimant had a lot of emotional problems, which were both recent and long-standing. Dr. Poetter opined that there was a tremendous amount of overlap between claimant's pre-injury psychological state and her current depression and physical suffering.
Dr. Poetter believed that claimant's working had been a way for claimant to cope with her history and stresses at home. Dr. Poetter testified that claimant's industrial accident was "like the straw that broke the camel's back," and that the industrial accident had a substantial exacerbating effect on claimant's underlying personality disorder. Dr. Poetter believed that claimant previously had been able to carry on her job duties without mental health intervention. Dr. *245 Poetter testified that, within a reasonable degree of medical probability, claimant would benefit from psychological or psychiatric treatment.
In a report dated February 14, 1992, Dr. Poetter noted that claimant's symptoms were suggestive of a severe depressive disorder of at least two years duration. Dr. Poetter attributed claimant's current emotional problems at least in part to claimant's inability to recover from the industrial accident. Dr. Poetter noted that claimant gave a history of taking an unknown antianxiety agent twenty years ago after a hysterectomy, but otherwise gave no history of mental health treatment. Dr. Poetter's diagnostic impressions included psychogenic pain disorder; major depression, single episode with melancholia; and dependent personality disorder. Dr. Poetter recommended that claimant be referred for psychiatric treatment and prescription of needed medication. Dr. Poetter also recommended that claimant attend ACOA support groups.
The JCC denied claimant's request for psychiatric or psychological treatment. The JCC found that claimant failed to establish that her post-traumatic mental distress was the "immediate" result of the industrial accident. In finding that claimant failed to establish causation, the JCC cited Dr. Poetter's testimony that claimant's upbringing and violent marriage played a "significant role" in claimant's mental disorder, and that claimant's emotional problems were "at least in part" due to claimant's inability to recover from the industrial accident. The JCC also found that there was evidence to suggest that claimant's gallbladder problems may have contributed to her alleged mental disorder. The JCC noted that claimant's gallbladder, liver and pancreas were subsequently removed due to infection.
We hold that the JCC applied an incorrect legal standard in finding that claimant failed to establish that her mental disorder was the "immediate" result of the industrial accident. For a mental injury to be compensable, the mental injury must (1) be predicated on an actual physical injury and (2) not be remote or incidentally related to the industrial accident. Wal-Mart Stores v. Tomlinson, 588 So.2d 276 (Fla. 1st DCA 1991); Superior Mill Work v. Gabel, 89 So.2d 794 (Fla. 1956). In other words, the mental injury must be the direct and immediate result of the industrial injury. Id. There is no specific time period for the manifestation of a mental injury. Tomlinson, 588 So.2d at 276, citing Greater Miami Academy v. Blum, 466 So.2d 1263 (Fla. 1st DCA 1985), rev. denied, 476 So.2d 672 (Fla. 1985).
In establishing causation, it is not necessary for a claimant to show that the industrial accident is the sole cause of the mental injury or condition, but only that it is either a competent, precipitating or accelerating cause of the injury. Turner v. G. Pierce Wood Memorial Hosp., 600 So.2d 1153 (Fla. 1st DCA 1992). The aggravation of a psychiatric condition is compensable if shown to be the direct and proximate result of the industrial accident. Id.
In the present case, the JCC's order states the correct legal standard in determining whether a mental injury is compensable. Nevertheless, it appears that the JCC incorrectly interpreted "immediate" to mean the time period in which a mental injury manifests itself. Although the time period in which a mental injury manifests itself may be one factor to consider in determining whether a mental injury is compensable, "direct and immediate" means that the injury must not be remote or incidentally related to the industrial accident. Superior Mill Work v. Gabel, 89 So.2d 794 (Fla. 1956).
In finding that subsequent medical problems may have contributed to claimant's alleged mental disorder, the JCC appears to have misapprehended the nature of claimant's medical problems after the industrial accident. Claimant testified that her gallbladder was removed and that her liver and pancreas became infected from the gallbladder. The record does not show that claimant's liver and pancreas were removed as a result of claimant's gallbladder problems. Although claimant testified that she experienced pain approximately six months prior to her gallbladder surgery in January 1992, Dr. Webb had already referred claimant to Dr. Poetter before claimant's gallbladder surgery.
The determination of the cause of a non-observable medical condition, such as a psychiatric illness, is essentially a medical *246 question. Turner v. G. Pierce Wood Memorial Hosp., 600 So.2d 1153 (Fla. 1st DCA 1992). Where causation is established by unrefuted medical testimony, the JCC may not reject that testimony unless a sufficient reason is provided for doing so. Turner, 600 So.2d at 1157.
In the present case, Dr. Poetter, the only psychologist to testify, testified that the industrial accident had a substantial exacerbating effect on claimant's underlying personality disorder. Dr. Poetter's testimony was unrefuted. We therefore find that the JCC erred in rejecting Dr. Poetter's testimony without providing a reasonable and competent reason for doing so based on the record.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.
ALLEN and WEBSTER, JJ., concur.