654 So.2d 241 (1995)
PRUETT-SHARPE CONSTRUCTION and Continental Loss Adjusting Services, Inc., Appellants,
v.
Charles HAYDEN, Appellee.
No. 94-1672.
District Court of Appeal of Florida, First District.
April 26, 1995.
*242 Mary E. Cruickshank of McConnaughhay, Roland, Maida & Cherr, Tallahassee.
Barry Silber of Byrick, Silber & Davis, Pensacola.
SMITH, Senior Judge.
The employer/servicing agent (ESA), appellants, seek reversal of a workers' compensation order in which the JCC set aside a prior order approving a joint petition for lump-sum settlement, found the claimant permanently and totally disabled (PTD) due to his psychiatric condition, and awarded other benefits. We affirm the order setting aside the lump-sum settlement and the award of PTD based on claimant's psychiatric condition, as well the award of temporary total disability (TTD). Appellee concedes error in that portion of the order providing that the E/SA shall provide "remedial" psychiatric care, since the JCC also found that claimant has reached maximum medical improvement (MMI) from that condition and from his knee injury. We therefore reverse and order correction on remand as to the award of remedial care.
The claimant, Charles Hayden, who was 27 years of age at the time of the hearing (March, 1994), suffered a compensable injury to his knee on March 19, 1990 while employed as a construction laborer by the employer, Pruett-Sharpe Construction. Arthroscopic surgery was performed on March 28, 1990, following which claimant reached MMI as of June, 1990 and was assigned a permanent impairment rating of 8% of the body as a whole. Claimant's physician restricted claimant's physical activities, limiting him to sedentary work. Claimant did not return to work for the employer. He unsuccessfully attempted light duty work as a grocery bagger before being instructed by his treating physician to stop. Claimant's condition worsened, and in March, 1993, he again underwent arthroscopic surgery. The claimant continues to suffer from chronic pain and periodic failures of the knee joint. His doctor testified that claimant would continue to require further orthopedic care throughout his life.
In the spring of 1991, the claimant's former attorneys negotiated a lump-sum "washout" settlement with the E/SA as to all indemnity benefits. The joint petition for settlement presented to the JCC on April 22, *243 1991 fully addressed the claimant's physical injuries and treatment. No mention was made of claimant's psychiatric, mental or emotional condition. An order was entered by the JCC on May 24, 1991 approving the settlement. Unknown to the JCC, on May 18, 1991, only six days before the order approving settlement, the claimant attempted to take his own life by slashing both arms and wrists with a knife. He received emergency hospitalization and extensive psychiatric treatment and further hospitalizations during the ensuing year under the care of Dr. M. Anthony Graham, M.D., psychiatrist. When the claimant moved to the Ft. Walton Beach area he came under the care of another psychiatrist, Dr. Stephen Doheny, M.D. Both doctors concurred in a diagnosis of major depression, with alcohol and substance abuse, and possible features of personality disorder.
In March, 1993, through new counsel, claimant filed a petition to set aside the order approving lump-sum settlement, seeking, among other things, a determination of PTD based upon claimant's psychiatric condition. After a hearing, the JCC entered an order setting aside the lump-sum settlement, finding that the claimant's family notified claimant's counsel and the E/SA's claims adjuster of the claimant's suicide attempt and hospitalization, but no one advised the court of the claimant's situation. The JCC found that had he been so notified, the order approving the joint petition would not have been entered, but instead, in all probability an order rejecting the settlement and voiding the stipulation would have been entered.
Appellants contend that the JCC erred in finding the claimant's psychiatric condition causally related to his industrial accident, and even if causally related, it was error to set aside the order approving settlement. Appellants also maintain that even if the settlement order was properly vacated, the JCC erred in awarding TTD and PTD benefits.
The JCC found that at the time the settlement was approved, the claimant was actually TTD and had not yet reached psychiatric MMI. Citing section 440.20(12)(a) and (c), Florida Statutes (1989), the JCC noted that a lump-sum settlement could not be approved until three months after the date of MMI, and could only be approved after consideration of all material factors by the JCC. We are of the view that the JCC correctly determined that the claimant's major depression and his resulting attempted suicide were material factors to be considered in evaluating the settlement proposal, and that the judge's ignorance of these factors prevented him from discharging his duties under the statute. Contrary to the E/SA's arguments, we do not view the fact that the claimant's former counsel knew of the claimant's attempted suicide and hospitalization before the order was signed as barring a reconsideration of that order on a later application by the claimant. The evidence indicated that the E/SA's adjuster was also informed, notwithstanding the evidence that a written memorandum confirming that knowledge did not appear in the E/SA's file until the same date on which the settlement order was entered. In any event, it is clear that the statutory criteria for approval of settlements were not met in this case.
As noted, appellants maintain that the order vacating the settlement cannot be sustained because the claimant's psychiatric condition was not shown to be causally related to his industrial accident. Appellants challenge the JCC's finding that Dr. Graham "testified that the claimant's emotional condition was directly related to his 1990 industrial accident," urging that the absence of support in the record for this finding mandates reversal. Again we disagree.
Although Dr. Graham in his deposition did characterize his continuing treatment of claimant after the suicide attempt as focusing on claimant's recurrent substance and alcohol abuse, he also testified that the claimant's knee injury and its sequelae were contributing factors to his psychiatric and emotional condition. It is noted that Dr. Graham advised the E/SA of his opinion as to the causal connection by written report soon after his initial contact with the claimant. Dr. Doheny, who succeeded Dr. Graham as treating physician, was clearly of the opinion that claimant's diagnosis of major depression *244 was causally related to claimant's knee injury. Upon consideration of the entire testimony of these doctors, which was given by deposition, we are of the view that the JCC's finding of a causal relation between the knee injury and claimant's psychiatric condition is supported by competent, substantial evidence. The E/SA argue that since the medical evidence was by deposition this court is in position to reach a conclusion contrary to that of the JCC, based upon our independent evaluation of the evidence. As to this argument we reiterate, as we said in Florida Mining & Materials v. Mobley, 649 So.2d 934 (Fla. 1st DCA 1995), that the case may not be retried on appeal, and the resolution of conflicts in the evidence is within the fact-finding authority of the JCC. Thus, while differing conclusions might arguably be reached by selectively emphasizing and giving greater weight to portions of the testimony of the two physicians relied upon by the JCC, we find that such a process is part and parcel of the fact-finding function of the JCC, and we will decline to disturb the JCC's findings so long as, upon a fair consideration of the entire testimony, the JCC's findings and conclusions are supported by competent, substantial evidence. We find no basis upon which to overturn the JCC's findings from the medical evidence in this case.
We have not overlooked the considerable emphasis placed by the E/SA on the evidence of claimant's mental and emotional state predating his industrial accident. From such evidence the E/SA urge the conclusion that claimant's psychiatric condition was the product of these pre-existing factors, and thus unrelated to his knee injury. That the claimant endured a less than ideal existence prior to his injury is undisputed. Aside from his unfortunate personality or character traits and difficulties in his familial and other interpersonal relationships, the claimant had long been subject to alcohol and substance abuse, encountered difficulties with the law, and according to his statements had been admitted for voluntary treatment under the Baker Act. In addition, it appears that an immediate precipitating factor of his suicide attempt was very likely a break-up with his girlfriend.
It is clear, however, that both of the treating psychiatrists relied upon by the JCC took into account all of these admittedly pre-existing stressors bearing upon the claimant's mental and emotional state in arriving at their opinions as to the causal relation between claimant's physical injuries and his psychiatric condition. They noted, among other things, that while claimant's alcohol and substance abuse and possibly other factors contributed to his over-all problems, these factors do not necessarily lead to severe depression, nor would they be likely to lead to a suicide attempt in the manner attempted by the claimant. This court has recently addressed the law applicable to psychiatric disabilities and the correct legal standard to be applied by the JCC in ruling upon the issue of the causal relation required in order for such disabilities to be compensable. See, Ackley v. General Parcel Service, 646 So.2d 242 (Fla. 1st DCA 1994). We find that in the case before us the E/SA have failed to demonstrate that the JCC departed from the rules and principles set out in Ackley and the cases cited therein.
Finally, we touch only briefly upon the E/SA's contentions that the JCC's order does not set forth findings sufficient to support the award of TTD from the period May 4, 1991 to September 28, 1993, and that the finding and award of PTD was premature because of Dr. Doheny's testimony that the claimant's completion of an educational program he was currently pursuing could possibly help to stabilize his depression and prevent him from lapsing into his pattern of substance abuse. First, with regard to the award of TTD, while the order is sparse, the JCC did recite that the claimant remained in the hospital for about a month following his suicide attempt and that his emotional state "waxed and waned" over the ensuing months and required repeated hospitalizations thereafter. The JCC also noted that claimant was under regular out-patient care when not confined to the hospital. Further, although not recited in the order, we note the undisputed evidence that the claimant's knee problems became worse and required additional surgery in March, 1993. Next, we agree with the appellee's contention that the speculative nature of the testimony regarding the prospects *245 of claimant's improvement with completion of an educational course did not preclude the award of PTD in view of the doctor's firm conclusion that the claimant was incapable of work due to his mental condition. We find no reversible error on these issues.
The parties agree that the order for remedial care is in error, and on remand must be amended to provide for palliative care and treatment.
Accordingly, the order on appeal is affirmed as to all issues except for the award of remedial medical care, and on remand the order should be corrected accordingly.
ALLEN and DAVIS, JJ., concur.