688 So.2d 379 (1997)
Jimmie ANDERSON, Appellant,
v.
WALES INDUSTRIES and Gallagher Bassett Services, Appellees.
No. 95-3930.
District Court of Appeal of Florida, First District.
January 31, 1997.
Rehearing Denied March 19, 1997.
*380 Dennis Smejkal of Parish & Smejkal, P.A., Orlando; Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for Appellant.
Michael Broussard and Raymond L. Potts of Broussard, Condry, Morgan & Nelson, Orlando, for Appellees.
ERVIN, Judge.
Claimant, Jimmie Anderson, appeals an order in which the judge of compensation claims (JCC) denied benefits for his psychological condition, denied his claim for wage-loss benefits and failed to rule on his request to increase his average weekly wage (AWW). We reverse on all issues, except a portion of the order dealing with wage loss, and remand.
Anderson was a night-shift truck driver for the employer, Wales Industries, a subsidiary of Citrus World, when he was hit by a forklift on November 26, 1991, permanently injuring his lumbar spine and left wrist.[1] Once he returned to work shortly thereafter, he filled a variety of positions in the employer's extensive light-duty work program. He returned to night-shift driving on September 13, 1993, transporting empty cans used in juice production.
Several witnesses for the employer testified that although Anderson had the opportunity to work full-time hours, he repeatedly refused to haul loads and missed work for personal reasons or for insubordination. On November 21, 1993, after arguing heatedly with two of his supervisors and refusing to haul a load of fruit, saying that the bumpy road would hurt his back, Anderson left work and never returned. The next day he was hospitalized for symptoms of severe depression, inability to cope with stress, and homicidal and suicidal attitudes, and he remained in the hospital for the next two weeks. Anderson's treating psychiatrist diagnosed posttraumatic stress disorder, which was causally related to the stress Anderson had experienced at work.

Psychological Injury
The JCC concluded that Anderson's physical injuries did not contribute to his psychological condition; rather it resulted solely from stress at work that Anderson had brought on himself; consequently, the JCC denied his claim for benefits. In so deciding, the JCC found it significant that Anderson had made no serious effort to seek psychological help from the date of his accident until the date of his hospitalization.[2] He concluded that there was a "total absence" of medical testimony linking Anderson's physical injuries to his psychological condition. We disagree.
The law at the time of Anderson's injury required a mental injury to be predicated on a physical injury and to directly and immediately result therefrom, to be compensable.[3] *381 Ackley v. General Parcel Serv., 646 So.2d 242 (Fla. 1st DCA 1994). "There is no specific time period for the manifestation of a mental injury." Id. at 245. A claimant was not required to show that the industrial accident was the sole cause of the mental injury or condition, but simply that it was a precipitating or accelerating cause. Id. In other words, the industrial injury must have been an element in the causal chain resulting in or contributing to the wage loss. Turner v. G. Pierce Wood Mem'l Hosp., 600 So.2d 1153 (Fla. 1st DCA 1992). Even when a claimant had suffered physical injury, the psychological condition was not compensable if the medical evidence showed that it resulted from emotional or stress factors, rather than from the physical injuries. Thames v. Santa Rosa County Jail, 639 So.2d 95 (Fla. 1st DCA 1994); City of Miami Beach v. Morantes, 633 So.2d 491 (Fla. 1st DCA 1994); Egan v. Florida Atl. Univ., 610 So.2d 585 (Fla. 1st DCA 1992).
The JCC concluded that the medical evidence provided competent, substantial evidence for denying benefits. To the contrary, however, Dr. Guthrie repeatedly declined to attribute Anderson's psychological condition solely to stress that was unrelated to his initial physical injuries, stating instead that the two could not be separated. He opined,
Stress is the product of a series of events. And this series of events, in my opinion, began with the injurythe physical injuryand then his need to deal with that physical injury and then his need to deal with the situations at work as a result of his needing to change job descriptions and also a major, what he describes to me, cut in pay that was associated with the change in jobs.
Dr. Guthrie continued that the psychiatric hospitalization would not have occurred if Anderson had not suffered an industrial accident. Although he considered that job stress may have been the last link in the chain leading to claimant's condition, the initial linkthe original industrial accidentcould not be ignored. Dr. Guthrie observed that claimant had developed a phobic avoidance to his workplace, both because he initially had nightmares and thereafter developed mood instability and anxiety resulting from his injury, and because he had developed an inability to get along with other employees.
In addition to the above medical evidence, the JCC reviewed the testimony of psychiatrist Dr. James Fesler, who performed an independent medical examination, noting therefrom that Dr. Fesler testified that Anderson had only complained about "stress and anger and feelings of being taken advantage of by his co-workers and attributed his psychological problems to those phenomena." On the contrary, our examination of Dr. Fesler's testimony shows that he explicitly declined to attribute Anderson's condition solely to job stress, as opposed to the physical limitations caused by Anderson's industrial accident. He considered that if claimant's physicians had imposed physical limitations,[4] these could have become intertwined with his job stressors and led to his psychiatric difficulties. On the other hand, if claimant had no physical restrictions, Dr. Fesler said he would feel comfortable in concluding that claimant's psychological condition resulted only from how he felt he was being treated at work. When counsel for the employer/carrier (E/C) again pressed Dr. Fesler concerning whether he could conclude that Anderson was anxious and depressed because of how he was treated at work, rather than because of his physical limitations, Dr. Fesler replied,
I would have to say, based on what he told me, that there are elements of both.... I would say the physical limitations contributed to what happened at work and then his perception of it maybe was somewhat distorted. I do believe there's a thread that connects the physical injuries to his anger and upset and whatever even though the way he presented it, he just mostly *382 thought they were giving him a raw deal at work.
Accordingly, the JCC's conclusion, that there was a "total absence of medical testimony indicating that the physical injuries suffered by Mr. Anderson caused the emergency psychiatric admission on November 22, 1994," is not supported by competent, substantial evidence. Although it is undisputed that Anderson's physical injuries were not the sole cause of his psychological condition, both psychiatrists testified that his physical injuries were an integral element in the causal chain resulting in the psychological condition. Therefore, the denial of Anderson's claim due to the lack of causation is reversed and the cause remanded.

Wage-loss Benefits
The JCC also rejected Anderson's claim for wage-loss benefits, deciding that he either voluntarily limited his income by refusing to haul certain loads and by repeatedly missing work for personal reasons, or that the reduction in his earnings was attributable to an economic slowdown at work. Once again, we cannot agree. The JCC erred in denying all of claimant's wage-loss claims, in that the E/C only proved voluntary limitation of income for three of the periods in question.
Anderson seeks temporary partial wage-loss benefits[5] for the periods 2/28/93 through 3/20/93, 2/20/94 through 4/2/94, and 4/17/94 through 11/12/94. The E/C denied benefits on the basis of economic/seasonal slowdown or voluntary limitation of income. Although there was competent, substantial evidence that Citrus World had downsized, there was no evidence that this reduction had affected Anderson's truck-driving opportunities. Carson Weeks testified that the employer had 95 trucks in 1986 or 1987, which had been reduced to between 22 and 25 by the time of claimant's accident, and that this number had been further reduced to 11 trucks by March 1994, with a commensurate reduction in the number of drivers and driver hours. Nevertheless, neither Weeks nor any other witness testified that there were fewer driver hours available for those drivers who remained following the downsizing. Moreover, Michael Chambers testified that the employer always had loads available for its drivers, and that claimant consistently limited his income by repeatedly declining to accept loads offered to him. In his deposition, Chambers reiterated that he has unlimited loads available for his drivers so that a driver can make as many trips a day as he wants within his physical restrictions. Additionally, no evidence was presented identifying any particular wage-loss period in which Anderson purportedly had driven fewer loads because of the slow summer season.
In regard to the E/C's defense of voluntary limitation of income, Chambers did testify concerning a number of instances where Anderson had worked a partial day for personal reasons or refused additional loads, but this testimony supports the JCC's denial of benefits for only three wage-loss periods. Most of the dates identified do not pertain to any of the times in question, and as to several, Anderson worked a partial shift because he had scheduled appointments with his physician. Accordingly, there are only two days that Anderson refused additional loads (10/31/9 and 11/1/94), and two days that he was absent from work without permission (5/23/94 and 6/20/94), which provide competent, substantial evidence for the JCC's denial of wage-loss benefits for the periods 5/15/94 through 5/28/94, 6/12/94 through 6/25/94, and 10/30/94 through 11/12/94. Wage loss caused by refusing employment that one is physically capable of performing constitutes voluntary limitation of income. Superior Pontiac v. Hearn, 458 So.2d 1197 (Fla. 1st DCA 1984); Glades Correctional Inst. v. Bukowski, 528 So.2d 58 (Fla. 1st DCA 1988).
For the period from 11/22/94 through 12/9/94, Anderson was hospitalized for his psychological condition, a time that Dr. Guthrie had opined claimant was temporarily and totally disabled. Because we have concluded that claimant's psychological condition was *383 causally related to his industrial accident, he is therefore entitled to temporary total disability benefits for such period.
For the time from 12/10/94 through 4/29/95, Anderson contends that he conducted a good-faith job search after being discharged from the hospital, and that the E/C did not present any evidence that a job was available to him after November 22, 1994. The JCC must address this final period on remand.

Increased AWW
In regard to Anderson's claim for an increased AWW, it is impossible for us to determine from the final order whether the JCC accepted the parties' stipulation, or whether he rejected Anderson's claim. The parties on appeal differ as to whether a stipulation was reached. The JCC should determine this issue on remand.
Based upon our decision as to the above issues on appeal, the JCC must determine on remand whether claimant is entitled to interest, costs and attorney's fees.
AFFIRMED IN PART, REVERSED IN PART and REMANDED for further proceedings consistent with this opinion.
BARFIELD, C.J., and KAHN, J., concur.
NOTES
[1] The parties stipulated that Anderson had a 3.5 percent permanent impairment of his lumbar spine, and a 5 percent impairment of his left wrist.
[2] The JCC found Anderson's four or five visits to a therapist during that time to have been insignificant.
[3] We emphasize that we are evaluating Anderson's psychological condition under the law as it stood prior to the 1993 amendments to section 440.09, Florida Statutes (Supp. 1994), which significantly changed the standards of proving causation.
[4] Permanent physical restrictions were, in fact, placed on claimant's hand and back.
[5] The JCC must determine on remand when or whether Anderson has reached maximum medical improvement for his psychiatric condition, and award temporary partial rather than permanent wage-loss benefits for those periods identified below which occurred before such date.