PER CURIAM.
Gulfstream Press, Inc., and The Chubb Group of Insurance Companies, employer and carrier respectively, appeal an order denying their statute of limitations defense to Jorge Acle’s claim for treatment from Dr. Richard Levitt. The petition for benefits was filed more than four years after claimant last received treatment from Dr. Levitt. We find the claim barred by section 440.19, Florida Statutes (1987), and reverse.
After his industrial accident on June 23, 1988, Mr. Acle saw Jack Cooper, M.D., an authorized orthopedic surgeon. On August 23,1988, Dr. Cooper performed an arthrosco-py of the right knee to repair a large tear on the posterior of the medial meniscus. Following surgery, Mr. Acle continued to have pain and swelling in his right knee; and Dr. Cooper referred him to John Uribe, M.D., another orthopedic surgeon, who was also authorized. An MRI at the time showed changes in the medial meniscus, which could have been either normal post-surgical changes or another meniscal tear. On February 24, 1989, Dr. Uribe performed a right knee arthroscopy with partial medial menis-cectomy.
Mr. Acle received temporary total disability benefits from August 23, 1988 to October 2, 1988 and from October 10, 1988 to May 1, 1989 and temporary partial disability benefits from October 5, 1988 to October 10, 1988. Dr. Nadler returned him to work on May 16, 1989, without restrictions; and Dr. Uribe said Mr. Acle had reached maximum medical improvement by January 12, 1990 with a 2% permanent partial impairment, to the body as a whole. The employer/carrier controverted all wage loss claims from May 1,1989.
The employer/carrier and Mr. Acle settled all claims for disability, compensation benefits, and rehabilitative expenses (but not future medical care), when, on May 16, 1990 the parties’ attorneys and Mr. Acle signed Joint Petition And Stipulation For Lump Sum Settlement Under Chapter 440.20(12). The stipulation stated:
This is a Stipulation and Joint Petition for settlement of all claims of the employee for compensation, past and future, by reason of the captioned accident, but one which reserves to the employee the right to additional medical care, pursuant to the provisions and limitations of the Florida Workers’ Compensation Act.
Specifically, paragraph nine of the stipulation stated:
That the employer, Gulfstream Press, and its workers’ compensation carrier, the Chubb Group of Insurance Companies, will continue to provide the employee with such future medical care, treatment and attention as is appropriate.... [C]arrier will authorize Dr. Levitt’s services for continuing and future care.
In the Stipulation, Mr. Aele’s attorney certified that he “ha[d] read and explained the contents of this agreement to the employee and the employee ha[d] signified his full understanding of its meaning and intent.”
On the same day that he signed the stipulation, Mr. Acle also signed an affidavit, in which he stated:
That he has read and fully understands the contents of the foregoing Stipulation for Lump Sum Settlement....
The next day, May 17, 1990, an ORDER FOR RELEASE FROM LIABILITY FOR FUTURE PAYMENTS OF COMPENSATION, REHABILITATION EXPENSES, OR DEATH BENEFITS BUT EXCLUDING MEDICAL EXPENSES was entered. The last sentence of this order stated: “The responsibility of the Employer/Carrier for future medical benefits remains as it now is for the time and in the manner provided by law.”
Subsequent to the entry of this order, Mr. Acle saw Dr. Levitt twice: on August 1, and on August 15, 1990. At the August 15, 1990 visit, Dr. Levitt noted that Mr. Acle continued to have mild discomfort; he documented the results of an August 9, 1990 MRI (which revealed a possible tear of the posterior horn of the lateral meniscus) and then wrote: “He *215 does not desire any further treatment at this time, and is being discharged from any followup care.”
Mr. Acle subsequently testified that he did not have further treatment with Dr. Levitt after the August 15 visit, because he left for Spain on November 11, 1990 and Dr. Levitt had indicated that he would need four to six months of physical therapy following any new surgery.[1] He also testified that he did not have any remedial treatment while he was out of the United States, just palliative care for pain and inflammation, because he did not trust surgery in Spain.[2]
Mr. Acle made four round trips between Spain and the United States in the next four years; and on one occasion, in 1991, he tried to make an appointment with Dr. Levitt, but the waiting period was three to four weeks and he was only going to be in the country for a week and a half. When he returned to Dade County permanently in 1994, he did not attempt to make an appointment with Dr. Levitt “[bjecause I don’t know if I change — if the insurance change the doctor or — .” He said that he did not try to call Chubb because he did not have the telephone number, and that he preferred to contact his prior attorney, who referred him to a new attorney, Joseph Hackney.
In January 1995, Mr. Hackney filed a Request for Assistance; and on February 16, 1996 he completed a Petition for Benefits, seeking “[tjreatment of claimants (sic) left knee refused by carrier by Dr. Levitt as per settlement agreement.” [3] The employer/ear-rier filed a Notice of Denial on February 22, 1996, citing the statute of limitations, because Mr. Acle had last seen Dr. Levitt on August 15,1990.
The Judge of Compensation Claims found that the employer/ carrier were estopped from relying on the statute of limitations defense, because Mr. Acle, whom the Judge of Compensation Claims found “fully credible,” testified that he was never informed of section 440.19(l)(b), Florida Statutes (1987), which provides:
All rights for remedial attention under this section shall be barred unless a claim therefor ... is filed with the division within 2 years after the time of injury, except that, if payment of compensation has been made or remedial attention or rehabilitative services have been furnished by the employer without an award on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention or rehabilitative services furnished by the employer; and all rights for remedial attention or rehabilitative services under this section pursuant to the terms of an award shall be barred unless a further claim therefor is filed with the division within 2 years after the entry of such award, except that, if payment of compensation has been made or remedial attention or rehabilitative services have been furnished by the employer under the terms of the award, a further claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last *216 remedial attention or rehabilitative services furnished by the employer....
We do not disturb that finding of fact, but we do not agree that the statute of limitations was tolled here.
In Brunswick Corp. v. Cummings, 648 So.2d 787 (Fla. 1st DCA 1994), the judge of compensation claims concluded that the statute of limitations had been tolled because he found the language in the settlement agreement was ambiguous. In reversing, this court held that the determination that Mr. Cummings did not understand the settlement agreement, even if correct, was not determinative, “especially considering that Cummings signed the agreement and supporting affidavit, was represented by counsel at the time, and does not allege that he was coerced into making the settlement or signing the agreement.” Cummings, 648 So.2d at 788.
In the case at bar, the identical Department of Labor and Employment Security form order was apparently entered.[4] Mr. Acle, like Mr. Cummings, signed the agreement and supporting affidavit and was represented by counsel. The order stated that Mr. Acle’s entitlement to future medical treatment was “for the time and in the manner provided by law.” His former attorney certified that he had explained the contents of the settlement agreement to Mr. Acle; that Mr. Acle had signified “his full understanding of its meaning and intent;” and that this “understanding” included an understanding of the stipulation’s provisions awarding future medical care “pursuant to the provisions and limitations of the Florida Workers’ Compensation Act.”
In support of his argument that employer/carrier should be estopped from asserting the statute of limitations defense, Mr. Acle cites Southern Bell v. MacDonald, 671 So.2d 207 (Fla. 1st DCA 1996)(holding that the statute of limitations did not bar claim for benefits where E/C failed to advise claimant of her rights under section 440.185(2)(e), Florida Statutes (1985)); Timmeny v. Tropical Botanicals Corp., 615 So.2d 811, 817 (Fla. 1st DCA 1993)(holding that employer/carrier were estopped from asserting statute of limitations defense until claimant had actual notice of possible entitlement to benefits); Turner v. G. Pierce Wood Mem’l Hosp., 600 So.2d 1153, 1158 (Fla. 1st DCA 1992)(stating that the claim that employer/carrier told claimant that the statute of limitations had expired, when it had not, could, if true, legally toll the statute of limitations); Stines v. Winter Haven Hosp., 548 So.2d 818 (Fla. 1st DCA 1989)(holding that the statute of limitations does not bar claim for benefits when employer fails to inform claimant of eligibility for them); Holiday Care Ctr. v. Scriven, 418 So.2d 322, 327 (Fla. 1st DCA 1982)(stating that an affirmative duty to place needed benefits into injured employee’s hands continues when claimant is represented by counsel); Florida Erection Servs., Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981)(stating that the 1979 Workers’ Compensation Law “will not tolerate passive disapproval and rejection of claims”).
None of these cases involved a claimant’s rights after a settlement agreement. In Southern Bell, the only case on which Mr. Acle relies that was decided after Cummings, Charlene MacDonald argued that she was uninformed about her rights to receive Workers’ Compensation benefits only until she retained an attorney. An employer/carrier’s affirmative duty to provide benefits to a claimant, even one represented by counsel (as in Scriven), differs statutorily from any duty to inform a claimant about the statute of limitations. This claimant was represented by an attorney when he signed a settlement agreement, which recited that the attorney had explained the contents of the agreement to him and that the claimant fully understood it. Appellant also signed an affidavit which said that he “fully understood] the foregoing Stipulation.” Because appellant admits that he understood he was entitled to medical benefits at his employer’s expense but failed to obtain any for four years, Cummings requires reversal.
Reversed.
DAVIS and BENTON, JJ., and SMITH, Senior Judge, concur.

. Mr. Acle gave this testimony at the October 6, 1996 merits hearing. When asked on recross examination why he did not schedule surgery between August 15 and November 11, 1990, he replied:
Because I was so hurried and concentrated in my trips and I think the problem is not a big problem to stop trips to Spain to make the surgery. I think I do the surgery in the future. I mean two years, one year later. I can work. I can do many things, you know. The limitation is minimal. The pain is not a lot. It’s pain anyway. It's painful I think.

. Mr. Acle also testified at the merits hearing that he did not ask the Chubb Group to pay for palliative care in Spain, because he could not reach the insurance company and because he did not think it would cover treatment in Spain. Chubb’s workers' compensation claims supervisor subsequently testified at the hearing that the company authorized care and treatment for injured workers’ compensation claimants outside the United States, and was currently providing treatment in Africa, Italy, France, Canada, Scotland, and Mexico.

.Claimant’s Motion To Amend and/or For Continuance of June 4, 1996 stated that there was a scrivener's error on the Request for Assistance that carried over to the Petition for Benefits and the pre-trial stipulation, whereas the left knee was indicated, rather than the right knee. At the merits hearing, Mr. Acle’s attorney stated that the actual treatment sought was bilateral knee treatment.

. LES form OCC 11 (7/83).