ERVIN, J.
Claimant, John Viteritti, Jr., seeks reversal of a final workers’ compensation *522 order wherein the judge of compensation claim (JCC) denied his petition to set aside the indemnity settlement order entered on April 12, 1990, and the medical settlement order entered on October 19, 1995, based upon the doctrine of res judi-cata and a finding that claimant was mentally competent at the time he entered into the settlements. We affirm the finding of competency, because there is competent, substantial evidence to support the JCC’s ruling. We reverse the JCC’s application of res judicata, however, because she failed to reach factual questions essential to the determination of whether res judicata should have been applied.
Different JCCs entered the two settlements. JCC A.S. Seppi entered the indemnity settlement without the benefit of a hearing, which claimant had waived. JCC Judith Brechner entered the medical settlement following a telephonic hearing. Claimant was unrepresented during both proceedings.
In March 1996, claimant, in a pro se capacity, sought to have the two settlement orders set aside for the reasons that the amounts were too low, he had been misled about the actual value of the case, and he did not understand that the settlements could not be modified. JCC William Johnson denied that request by order entered September 26, 1996, following an evidentiary hearing.
On October 1,1999, claimant, through an attorney, filed a second petition to set aside the settlements based on the grounds of mutual mistake of fact, overreaching, concealment, and fraud. More specifically, he alleged that during the entire course of negotiations leading up to the settlements he was mentally incompetent and psychologically disabled. He contended that the employer and insurance carrier (hereinafter E/C) knew but withheld this information from the two JCCs who approved the settlements. Moreover, JCC Johnson was also unaware of claimant’s condition when he denied the first request to set aside the settlements.
JCC Mily Rodriguez-Powell considered this second petition to set aside, and admitted evidence concerning claimant’s long history of psychiatric problems. It was shown that claimant, while in the hospital for treatment of his compensable injury, experienced psychiatric problems and was diagnosed with bipolar disorder. He responded well to treatment provided in the hospital by Dr. Jones for his psychiatric condition, but no further treatment was sought or provided by the E/C. Claimant was evaluated by several psychiatrists and psychologists between 1998 and 2000, who diagnosed paranoid schizophrenia, schizo-affective disorder secondary to manic bipolar disorder, and delusional disorder of persecutory type with features of schizo-typal personality disorder. All doctors testified that these types of disorders are the kinds that generally first surface during a person’s teen years, and claimant had, in fact, been treated by a psychiatrist when he was 19 years old. Although none of the doctors testified that claimant was mentally incompetent as a result of these illnesses at the time the settlements were entered, all opined that claimant’s psychiatric condition would have interfered with his judgment and that it had not been in his best interest to represent himself, largely because of the denial of his own mental state that accompanied his psychological condition. Nothing in the record shows that either JCC who entered the settlement orders was aware of claimant’s psychiatric condition, nor is there any evidence that JCC Johnson was aware of it. Although most of this information was not available to anyone until well after the settlements and the first order denying the request to set aside the settlements, the *523 fact remains that claimant had been diagnosed with bipolar disorder and depression by physicians who treated him for his com-pensable back injury, and it does not appear that any JCC was aware of this until the 2000 hearing.
This evidence, coupled with claimant’s allegations that the E/C concealed his psychiatric conditions from the JCCs and/or that there was a mistake of fact regarding his condition when the settlements were entered, raises questions of fact that the JCC should have determined in deciding whether to apply res judicata. As stated in Artigas v. Winn Dixie Stores, Inc., 622 So.2d 1346 (Fla. 1st DCA 1993), “The appropriate application of the doctrine may involve factual determinations, including whether application of the doctrine would result in an injustice. The doctrine should not be applied in cases where it would result in an injustice.” Id. at 1348 (citation omitted). See also deCancino v. E. Airlines, Inc., 283 So.2d 97 (Fla.1973) (directing the JCC to consider the exceptions to res judicata, including possible injustice, when it remanded for reconsideration of the doctrine’s application). And see Pruett-Sharpe Constr. v. Hayden, 654 So.2d 241 (Fla. 1st DCA 1995) (setting aside a settlement, because the JCC was unaware that the claimant had attempted to commit suicide six days before its entry).
AFFIRMED in part, REVERSED in part, and REMANDED.
BARFIELD and ALLEN, JJ., Concur.